**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCO CONTRACTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:20-cv-0237 |
| | ) | |
| CITIZENS FINANCIAL GROUP, INC., | ) | |
| d/b/a CITIZENS BANK, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiff, MARCO CONTRACTORS, INC. ("Plaintiff"), by and through its undersigned counsel, Christopher A. Cafardi, William J. Wyrick, and Cafardi Ferguson Wyrick Weis + Gabriel LLC, files the within Amended Complaint against Defendant, CITIZENS FINANCIAL GROUP, INC., d/b/a CITIZENS BANK ("Defendant"), alleging as follows:

## PRELIMINARY STATEMENT

1.      This is an action seeking direct, consequential, and punitive damages from Citizens Financial Group, Inc., d/b/a Citizens Bank ("Citizens Bank"), due to its grossly negligent, sufficiently wanton, willful, and reckless action and inaction with regard to Marco Contractors, Inc.'s ("Marco") Citizens Bank accounts.

2.      As set forth more fully below, Citizens Bank, who was charged with safeguarding Marco's accounts, was severely negligent in its duties to Marco. Citizens Bank became aware of fraudulent activity in 2013 and 2014 with regard to Marco's accounts; however, it failed to notify Marco's owners of the suspicious and fraudulent activity and failed to enact or even discuss the available industry standard safeguards to prevent additional fraudulent activity. It was not until Marco independently became aware of fraudulent activity and notified Citizens Bank in early

1

2019, that Citizens Bank discussed fraud prevention tools with Marco's owners. Furthermore, even after becoming fully aware of the internal and external fraud suffered by Marco, Citizens Bank continued to allow fraudulent checks to be presented and cashed and debits to be fraudulently withdrawn against Marco's accounts until June/July 2019. The nearly inconceivable actions and inactions by Citizens Bank constitute: (1) common law professional negligence pursuant to the Restatement of Torts (Second) §299A, (2) negligence under 13 Pa.C.S.A. §3405(b) and §4401 of the Pennsylvania Commercial Code, (3) negligence under 13 Pa.C.S.A. §4A-204(a) of the Pennsylvania Commercial Code, (4) negligence under 13 Pa.C.S.A. §4403 of the Pennsylvania Commercial Code, (5) negligent misrepresentation, and (6) conversion pursuant to 13 Pa.C.S.A. §3420 of the Pennsylvania Commercial Code, and (7) in the alternative to the common law and statutory negligence claims, breach of contract.

3.      Marco, and its subsidiary Rockerz, Inc., who was also severely harmed as a result of the internal and external fraud on Marco, are locally based, family owned, construction contractors. The internal and external fraud which occurred as a result of Citizens Bank's actions and inactions caused severe economic damage to Marco in the amount of over $8.7 million. In addition to the direct damages resulting from the internal and external fraud, Marco has also suffered significant consequential damages in the form of lost business opportunities and lost profits due to the widespread media attention concerning the incident.

## PARTIES

4.      Plaintiff, Marco Contractors, Inc. ("Marco"), is a Pennsylvania Corporation with its principal place of business located at 100 Commonwealth Drive, Warrendale, PA 15086.

5.      Upon information and belief, Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank ("Citizens Bank") is a Delaware Corporation with a principal place of business

2

located at One Citizens Plaza, Providence, RI 02903 and local offices located at 2005 Route 286, Pittsburgh, PA 15239 and 525 William Penn Place, 26th Floor, Pittsburgh, PA 15219.

## JURISDICTION AND VENUE

6.    Federal diversity jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §1332.  Plaintiff, Marco, is a Pennsylvania Corporation with its principal place of business in Pennsylvania and Defendant, Citizens Bank, is a Delaware Corporation with its principal place of business in Rhode Island; therefore, complete diversity of citizenship exists. Further, the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    Venue in this Honorable Court is proper pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

## FACTUAL BACKGROUND

8.    Marco has been a depositor and customer of Mellon Bank/Citizens Bank since Marco's inception in 1978, first openings its accounts at the Sewickley branch location in 1978, and later transferring these accounts to the Wexford branch location in 1986.

9.    In approximately 2001, Marco's Mellon Bank accounts became Citizens Bank accounts, pursuant to Citizens Bank's acquisition of Mellon Bank's branch banking operations. Since that time, Marco has maintained numerous accounts with Citizens Bank, including: Commercial Checking Account xxxxxx8405 (Marco's Operating Account), Checking Account xxxxxx8251, Checking Account xxxxxx6873, Checking Account xxxxxx4484, and Checking Account xxxxxx6873.

10.    The owners of Marco and its Citizens Bank accounts are Martin Smith , the founder, President, CEO, and his son Nicholas H. Smith, the Vice President.

11.     Over the many years of banking with Citizens Bank, Martin Smith developed professional and personal relationships with many Citizens Bank employees, including Rod Vingle, Marco's Relationship Manager in the late 1990s and early 2000s, James Nealon, Marco's subsequent Relationship Manager at Citizens Bank, and Frank Livorio, a Senior Vice President of Citizens Bank.

12.     Marco entered into an Agreement for Cash Management Services and Service Order in which Marco requested that Citizens Bank provide certain cash management services as selected and ordered by Marco from time to time.

13.     Upon information and belief, the Agreement for Cash Management Services and Service Order was signed by Marco and Citizens Bank.

14.     According to the Agreement for Cash Management Services and Service Order, Marco "may initiate the receipt of a specific Service or Services by placing an order (an "Order") with Citizens. Orders may be placed by any *Duly Authorized Person* in writing, by phone or electronic transmissions, *but in all cases must be in a form acceptable to Citizens*…Upon receipt by Citizens of an Order, Citizens shall have the right, in its sole discretion, to (i) accept or reject an Order, (ii) require additional information regarding an Order, and (iii) require Customer to complete, execute and deliver its Order on Citizens standard from (each a "Service Request") for a particular Service or Services." (emphasis added)

15.     On January 17, 2007, either in response to a request to modify the existing service by Marco's Controller Sue O'Neill ("O'Neill")[1] or upon Citizens Bank's own initiative, Lori A. Stumpf, Vice President of Citizens Bank's 2005 Route 286, Pittsburgh, PA location, sent an email

---

[1] O'Neill was hired by Marco in late 2006, in a position other than Controller, however, over time her position morphed into the Controller position.

to O'Neill, attaching a Money Manager Service Request showing O'Neill as the system administrator and requesting that O'Neill verify her email address and have Martin Smith, the President, CEO, and Duly Authorized Representative of Marco, sign the document. According to the Money Manager Service Request, O'Neill would be the sole individual acting on behalf of Marco with full authority to manage the Money Manager Global Payment System ("Money Manager GPS") with the power to create and entitle additional users. A true and correct copy of this email is attached hereto as Exhibit 1.

16.     Upon information and belief, the Money Manager Service Request was never provided to or forwarded to Martin Smith at any time by Citizens Bank, nor did he sign the document.

17.     Rather, O'Neill forged Martin Smith's signature, completed the Money Manager Service Request, and returned same to Ms. Stumpf for processing on or around January 17, 2007. A true and correct copy of the Money Manager Service Request is attached hereto as Exhibit 2.

18.     On February 26, 2007, in an email generated by Citizens Bank from clientservices@cfgcustomers.com to O'Neill, after receipt of the forged Money Manager Service Request, Citizens Bank provided O'Neill with a password to access Marco's Money Manager GPS accounts. Neither Martin Smith, nor any other representative of Marco, were copied on this email to O'Neill or informed of this change in any way. A true and correct copy of this email is attached hereto as Exhibit 3.

19.     Shortly thereafter on the same day, Oliva Weber, Officer Cash Management Analyst at Citizens Bank, sent a follow up email to O'Neill to confirm "that the change to have you listed as the Sysadmin for Money Manager GPS has been completed." Neither Martin Smith, nor any other representative of Marco, were copied on this email to O'Neill or informed of this

change in any way. A true and correct copy of this email is attached hereto as Exhibit 4.

20.     On July 10, 2008 Rod Vingle met with O'Neill to discuss "additional cash management services, primarily ACH payments." Upon information and belief, neither Martin Smith, nor any other duly authorized representative of Marco, was made aware of or condoned this meeting. (CFG_08224-25)

21.     On September 15, 2008, Lori Stumpf "[s]poke with Sue O'Neill regarding positive pay." Rather than reaching out to Martin Smith, or any other duly authorized representative of Marco, Lori Stumpf contacted O'Neill about implementing Positive Pay (an anti-fraud protocol offered by Citizens Bank). (CFG_08224)

22.     On November 17, 2008, Brian Burke, a Senior Vice President at Citizens Bank, sent a letter to O'Neill informing her that "[i]n an effort to provide you with tools to help protect your online data, Citizens Bank is requiring all MM GPS customers to have a RSA SecurID token key fob(s) in order to access the MM GPS system," and enclosing the MM GPS Token Authentication Registration Agreement for System Administrators to be completed, signed, and faxed back to Client Services. Neither Martin Smith, nor any other representative of Marco, were included in this communication to O'Neill regarding this change to Marco's account. A true and correct copy of this letter is attached hereto as Exhibit 5.

23.     On November 26, 2008, O'Neill completed and submitted the MM GPS Token Authentication Registration Agreement, again forging Martin Smith's signature, requesting one token for herself and two additional tokens for other users. Said agreement listed O'Neill as the "User" and Martin Smith as "Duly Authorized Representative" and "Customer." A true and correct copy of the MM GPS Token Authentication Registration Agreement is attached hereto as Exhibit 6.

24.     Marco has since learned in its conversations with other Citizen Bank customers, that Citizens Bank requires customers to have a two person-two token payment verification process for ACH payments. Said customers also indicated that Citizens Bank denied their request to have both tokens issued to the same individual. Further, said customers indicated that they spoke to their Relationship Managers at Citizens Bank to try to get around this requirement, however, Citizens Bank would not allow it. Marco does not know why this fraud prevention mechanism was never (1) discussed with Martin Smith and (2) required for Marco's accounts with Citizens Bank.

25.     On May 21, 2008, Rod Vingle met with Martin Smith in person "to review our approval of a $500M line of credit that basically re-instates a line that lapsed in the fall of 2008." (CFG_08222)

26.     On June 18, 2009, Rod Vingle met again with Martin Smith in person "along with Livorio . . . to review documentation for a $500M line of credit." (CFG_08221-22)

27.     On July 24, 2009, Martin Smith entered into a Revolving Demand Note and Security Agreement ("2009 Note") with Citizens Bank for a $500,000.00 line of credit. (CFG_00360-68, 05434-45)

28.     O'Neill was chronically late with producing required financial reports to Citizens Bank. However, at no time did Citizens Bank representatives reach out to Martin Smith or any other duly authorized representative regarding Marco's chronically late financials.

29.     Marco's March 31, 2013 Balance Sheet, which was provided by O'Neill to Citizens Bank, was approximately $99,000.00 out of balance. (CFG_06913)

30.     In November 2013, Darrin Patterson, Marco's AP/AR Manager at the time, sent an email to Eric Haberman, the Branch Manager at Citizens Bank's Thorn Hill location, notifying him that "[f]ive fraudulent checks cleared our account this morning" and asking him to "[p]lease

make certain that every check is properly scrutinized…I'm sure more are coming." (CFG_07882-83)

31.     Between November 8, 2013 and mid-December, Citizens Bank representatives, including Eric Haberman, Daniel Kennelly, and Eric Kaveny were made aware of a number of fraudulent checks posted against Marco's account and communicated with Darrin Patterson and O'Neill regarding same. (CFG_07838-84)

32.     Despite it being well known banking industry procedure in fraud or suspected fraud instances, Marco is unable to locate any evidence that Citizens Bank representatives encouraged or even suggested that O'Neill or Darrin Patterson close the Marco accounts compromised by fraud and have new account numbers issued.

33.     Furthermore, Marco is unable to locate any evidence that Martin Smith was informed of the fraud that occurred within Marco's accounts in November 2013. Rather, Citizens Bank communicated only with O'Neill and Darrin Patterson regarding the 2013 fraud.

34.     On January 3, 2014, less than two months after the November 2013 fraud checks situation, O'Neill sent an email to Eric Kaveny and Daniel Kennelly informing them that a check in the amount of $50,662.30 had cleared Marco's account without having been signed. (CFG_07884-85)

35.     On May 13, 2014, in an email from Devin McMahon of Citizens Bank to O'Neill only, and not Martin Smith or any other representative of Marco, Citizens Bank wrote:

> Cybercrime is an ever increasing threat to the security of online banking transactions. RBS Citizens is taking steps to help our clients combat this threat. On 5/21/2014, RBS Citizens will be activating Dual Approval controls for wire transfers and/or ACH functionality on Money Manager GPS. Dual Approval controls help prevent fraud by requiring two individual users to create and release wire transfers and ACH payments.

Another effective fraud prevention tool for online banking transactions is Trusteer Rapport, a free anti-malware application available to all RBS Citizens clients. This software complements and adds additional protection for users who already have anti-virus software on their machines since anti-virus programs are usually not able to detect the type of malware that fraudsters are using to attack online banking transactions. Click on the ad at the top right corner of the Money Manager GPS home screen to install this valuable tool.

For more information, please read "Dual Approval Guide" on the Money Manager GPS Events page found under the Help tab

We will soon be reaching out to you by phone to offer our assistance with preparing for these upcoming changes.

If you feel you and your Money manager GPS users are prepared for this change, then please reply to this message with a brief confirmation that you are aware of these changes and are prepared for their implementation.

If you have any further questions or inquiries, please reach out to Client Services for assistance.

A true and correct copy of this email is attached hereto as Exhibit 7.

36. Neither Martin Smith, nor any other duly authorized representative of Marco, ever received a phone call offering assistance regarding Dual Approval controls as indicated in the above email, or any other communication for that matter, regarding any tools or services which would assist with fraud prevention at that time.

37. On May 20, 2014, O'Neill sent an email to Paula Cory requesting an additional token. A true and correct copy of this email is attached hereto as Exhibit 8.

38. Upon information and belief, O'Neill's request for an additional token was fulfilled shortly thereafter, with the additional token being mailed to O'Neill at Marco's headquarters in Warrendale.

39. Citizens Bank never requested the permission and approval of Martin Smith, the owner, customer, and duly authorized representative of Marco, prior to fulfilling O'Neill's request.

40. On September 4, 2014, Lisa Johnson, an Operations Analyst from Citizens Bank,

sent an email to James Nealon, Marco's Relationship Manager, informing him that Marco "Checks are coming through our fraud report for duplicate serial number. The check for $3,562.32 check style is different could be possible counterfeit" and asking him to "please call the customer and confirm that these check[s] are ok."

41.    Three fraudulent duplicate checks, check number 95042 for $3,562.32, check number 95043 for $3,562.32, and check number 94931 for $2,695.49, made out to businesses or individuals in Georgia from Marco's account, were cashed on or around August 27, 2014.

42.    James Nealon failed to contact Martin Smith, the owner, customer and duly authorized representative of Marco, to inform him of the situation or request his assistance in dealing with the suspicious and fraudulent activity.

43.    Citizens Bank representatives, including James Nealon, Eric Kaveny, and Dick Jones, communicated only with O'Neill regarding the fraudulent checks.

44.    On September 4, 2014, in another email to James Nealon, Lisa Johnson indicated that she placed Marco's account on a "watch list."  A true and correct copy of the email communications between Citizens Bank representatives and O'Neill is attached hereto as Exhibit 9.

45.    However, upon information and belief, Citizens Bank took no additional steps to secure the account from fraud at that time or as an ongoing concern, despite being put on notice of suspicious and fraudulent activity regarding Marco's accounts.

46.    Instead, James Nealon, Frank Livorio, and other Citizens Bank employees, abandoned their responsibilities to Marco, and Martin Smith as the President, Owner, and CEO of Marco, by failing to ward off threats of fraud or adopt measures that would protect Marco.

47.    In the years 2013 through 2015, Citizens Bank experienced significant changes.

The current CEO of Citizens Bank, Bruce Van Saun, joined Citizens Bank in October 2013. By many indications the bank was poorly managed for a long time prior to Van Saun's arrival in 2013. Van Saun quickly began installing his new team of senior executives, including Beth Johnson (currently Chief Experience Officer; formerly head of Corporate Strategy) in 2013, Stephen Gannon, General Counsel and Chief Legal Officer) in July 2014, Malcolm Griggs (currently Chief Risk Officer/Chief Lending Officer; formerly Executive Vice President and Chief Credit Officer) in December 2014, and Donald McCree, Head of Citizens Bank's Commercial Banking in September 2015.

48.     On May 15, 2015, Daniel Kennelly sent an email to O'Neill, copying Kolby Baker and James Nealon requesting past due financial reports and indicating that "The line of credit [relative to the 2009 Note] is coming up for review/renewal in June. . . No promises, but one of my recommendations that I will make is to lessen the reporting requirements, if possible." (CFG_06641)

49.     On May 29, 2015, Daniel Kennelly emailed O'Neill again, following up on his May 15th email, and again indicating that "I would like to limit the [financial reporting] requirements going forward," which upon information and belief was an attempt on the part of Citizens to entice Marco to sign a modified note agreement. (CFG_07060, 07425)

50.     James Nealon, Daniel Kennelly, and Kolby Baker were involved with getting a Modification Agreement to Revolving Demand Note prepared in May/June 2015.

51.     According to a Citizens Bank communication log, on July 10, 2015 James Nealon had a face-to-face meeting with Martin Smith. (CFG_08214) Upon information and belief, it is during this meeting that Martin Smith allegedly executed the Modification Agreement to Revolving Demand Note dated June 30, 2015 ("2015 Note Modification").

52.     On July 10, 2015, in an email between James Nealon, and other Citizens Bank employees including Stephanie Rogan, Daniel Kennelly, and Kolby Baker, James Nealon indicated that he "got the document signed." (CFG_11116)

53.     Further, upon information and belief, no Citizens Bank representative ever emailed, copied, or discussed the November 2013 and September 2014 actual fraud incidents with Martin Smith prior to having him sign the 2015 Note Modification, which differed significantly from the 2009 Note and included the following release language:

> 2.2 Release of the Bank. The Borrower hereby confirms that as of the date hereof it has no claim, set-off, counterclaim, defense, or other cause of action against the Bank including, but not limited to, a defense of usury, any claim or cause of action at common law, in equity, statutory, or otherwise, in contract or in tort, for fraud, malfeasance, misrepresentation, financial loss, usury, deceptive trade practice, or any other loss, damage or liability of any kind, including, without limitation, any claim to exemplary or punitive damages arising out of any transaction between the Borrower and the Bank. To the extent that any such setoff, counterclaim, defense, or other cause of action may exist or might hereafter arise based on facts known or unknown that exist as of this date, such set-off, counterclaim, defense and other cause of action is hereby expressly and knowingly waived and released by the Borrower. The Borrower acknowledges that this release is part of the consideration to the Bank for the financial and other accommodations granted by the Bank in this Agreement.

(CFG_00369-00374)

54.     Upon information and belief, Citizens Bank presented the 2015 Note Modification in a 'take it or leave it' fashion and did not afford Marco the opportunity to negotiate terms or discuss with an attorney before execution.

55.     The July 10, 2015 Citizens Bank communication log entry made by James Nealon makes no mention of the 2015 Note Modification or any discussion of the fraud incidents that occurred in November 2013 and September 2014. (CFG_08214)

56.     In fact, according to a Citizens Bank communication log entitled "All Activity History," between November 2013 and the July 10, 2015 meeting, Citizens Bank representatives

met with Martin Smith only once on March 19, 2014, when Daniel Kennelly introduced James Nealon to Martin Smith as Marco's new Relationship Manager. However, there is no indication that any Citizens Bank representatives discussed the fraud which occurred on Marco's accounts in November 2013 and September 2014. (CFG_08214-15)

57.     The facts and circumstances surrounding the 2015 Note Modification suggest bad faith on the part of Citizens Bank in that Citizens Bank induced Martin Smith to allegedly sign the 2015 Note Modification by concealing (or at a minimum, by failing to inform Martin Smith of) actual fraud which occurred in November 2013 and September 2014 within Marco Accounts, while also simultaneously seeking a release of all potential claims Marco may have against Citizens Bank "based on facts known or unknown that exist as of this date."

58.     Thus, the 2015 Note Modification is unenforceable against Marco as any alleged signature of Martin Smith was fraudulently obtained/induced by Citizens Bank.

59.     Upon information and belief, in this situation, banks would typically issue a whole new note, not amend a prior note with a modification agreement.

60.     Upon information and belief, the "facts known or unknown" release language added in Section 2.2 of the 2015 Note Modification is very uncommon in standard bank note forms, except in known 'troubled' situations.

61.     Upon information and belief, the release language and the other extremely one-sided language within in the 2015 Note Modification were part of a coordinated 'clean-up' effort by Citizens Bank to protect Citizens Bank from past operational issues and all major past exposures.

62.     On November 1, 2016 Stephanie Rogan sent an email to O'Neill, copying Kolby Baker, indicating that the June 30, 2015 (CFG_07993-97) balance sheet provided by O'Neill was

out of balance by "$305M." (CFG_06254)

63.     On February 8, 2016, Stephanie Rogan emailed O'Neill about Marco's September 30, 2015 financials being out of balance as well. (CFG_06573)

64.     Upon information and belief, it is essentially unheard of for a bank to extend $500,000.00 credit to a company where its Balance Sheet does not balance.

65.     At no time did Citizens Bank notify Martin Smith, or any other duly authorized representative of Marco, regarding the multiple occasions when Marco's Balance Sheets were significantly out of balance. Rather, Citizens Bank communicated exclusively with O'Neill.

66.     The 2009 Note was modified again in 2017. (CFG_05683-84, 05685, 06153, 06158, 06336-49, 06721, 06724-29, 09493)

67.     On February 28, 2017, Kolby Baker emailed O'Neill attaching a "modification to the loan documents for Marty's review" in which Citizens Bank agreed to eliminate "the requirements for quarterly A/R, A/P and Borrowing Base reporting. . . Given the long-standing relationship we are trying to make it simpler to do business…In lieu of this reporting we will just monitor the deposit balance of Marco" and requesting a time to for Baker and Frank Livorio to stop by Marco's offices to obtain Martin Smith's signature. Kolby Baker did not include Martin Smith in this email communication. (CFG_05683-84)

68.     On May 24, 2017, after a feeble attempt set up a face-to-face meeting with Martin Smith to witness the execution of the 2017 Note Modification, Kolby Baker emailed the 2017 Note Modification to O'Neill and asked her to have Martin Smith sign. More specifically, Baker wrote "Given Marty's busy schedule, I know you have had difficulty pinning down a time for us to meet to sign the documents. Is it possible that you can present the documents to him for signature and I can stop and pick-up at a later date to get this documented? I don't want our approval to expire

and really think it is of a benefit to Marco to ease the reporting requirements." (CFG_06153, 06158) Again, Martin Smith was not included in this email communication.

69.     On May 31, 2017, Stephanie Rogan sent an email to O'Neill, with Kolby Baker copied, requesting a number of significantly past due financial reports and reminding O'Neill that "reporting would no longer be required once the loan documents is signed" in a repeated enticement to have Marco execute the 2017 Note Modification. (CFG_05685)

70.     After receiving confirmation from O'Neill on June 15, 2017 that the 2017 Note Modification had been signed, Kolby Baker, went to Marco the next day to pick up the document. (CFG_06153-54)

71.     Interestingly, according to a Citizens Bank communication log, there is an entry made by Kolby Baker dated June 16, 2017 wherein Baker indicates that he "met with O'Neill to execute the loan mod docs," despite the fact that the above referenced emails indicate that Martin Smith's alleged signature was not witnessed by Baker or any other Citizens Bank representative. (CFG_ 08210)

72.     Upon information and belief, it is standard banking industry procedure for the bank to witness client signatures. That did not occur with the 2017 Note Modification.

73.     The facts and circumstances surrounding the 2017 Note Modification suggest bad faith on the part of Citizens Bank in that Citizens Bank induced Martin Smith to allegedly sign the 2017 Note Modification by concealing (or at a minimum, by failing to inform Martin Smith of) actual fraud which occurred in November 2013 and September 2014 within Marco Accounts, while also simultaneously seeking a release of all potential claims Marco may have against Citizens Bank "based on facts known or unknown that exist as of this date."

74.     Thus, the 2017 Note Modification is unenforceable against Marco as any alleged

signature of Martin Smith was fraudulently obtained/induced by Citizens Bank.

75.     Upon information and belief, no Citizens Bank representative ever discussed the November 2013 and September 2014 fraud incidents which occurred on Marco's accounts with Martin Smith prior to having him sign the 2017 Note Modification, which included the same release language as the 2015 Note Modification.  (CFG_09493-99)

76.     Upon information and belief, Citizens Bank presented the 2017 Note Modification in a 'take it or leave it' fashion and did not afford Marco the opportunity to negotiate terms or discuss with an attorney before execution.

77.     Upon information and belief, the "facts known or unknown" release language added in Section 2.2 of the 2017 Note Modification is very uncommon in standard bank note forms, except in known 'troubled' situations.

78.     Upon information and belief, the release language and the other extremely one-sided language within in the 2017 Note Modification were part of a coordinated 'clean-up' effort by Citizens Bank to protect Citizens Bank from past operational issues and all major past exposures.

79.     O'Neill set up an accounts system where Marco kept most of its cash in a 'General' account and only transferred enough each day to pay the checks presented for payment against a second account. On a recurring basis in 2018, when bank employees would arrive in the morning they would note on an internal "Pending OD" report that certain checks had been presented the previously night against the second Marco account. Citizens Bank would then contact O'Neill to get approval to transfer funds from the General Account to the "OD Account" by a 10:00 am deadline. Stated simply, Citizens Bank needed O'Neill to transfer funds to cover clearing checks under an almost daily 'pay or reject?' scenario for Marco's accounts. Citizens Bank only ever

contacted O'Neill, and apparently never Martin Smith or any other duly authorized representative of Marco. On many occasions O'Neill was slow in responding or hard to reach. Upon information and belief, O'Neill's inaccessibility to approve internal funds transfers to cover overdrafts by 10:00 am was a source of frequent anxiety within the bank. On numerous occasions, O'Neill was either unavailable or too slow to respond and this led bankers, such as Kolby Baker to make the transfer decisions without approval from Marco. (CFG_09253, 09249)

80.    On March 22, 2018, Kolby Baker emailed O'Neill inquiring as to why Marco's deposit levels were lower than usual. Martin Smith was not included in this correspondence or notified by Citizens Bank in any way regarding Marco's unusually low deposit levels. (CFG_06645-46)

81.    On or around February 17, 2019, it was discovered that O'Neill had embezzled approximately $8.7 million from Marco's Money Manager accounts beginning in approximately 2009 in various ways, including issuing payroll transfers drawn on Marco's accounts which were deposited into her bank account as well as a bank account for a company she created in 2014, called Bulldog Contractors, and by wiring funds from Marco's accounts to Bulldog Contractors' account. O'Neill hid her actions by manipulating the accounts payable records at Marco to fraudulently reflect that the money she had in fact stolen, had been paid to legitimate Marco vendors.

82.    It was also discovered that since 2014, Jacqueline Jones ("Jones"), a non-associated third-party, was fraudulently using the routing and bank account numbers for Marco's operating account to steal approximately $378,000 from Marco. A true and correct copy of a check fraudulently listing Jaquelyn Jones as the account holder, fraudulently setting forth her name and address, with Marco's routing and account numbers at the bottom of the check is attached hereto

as Exhibit 10.

83.     As part of the criminal investigation regarding O'Neill, numerous emails were found on O'Neill's computer from representatives and agents of Citizens Bank regarding previous potential fraud on Marco accounts going back to 2014. Said emails provided O'Neill with a roadmap on how to conduct internal fraud against Marco's accounts.

84.     Furthermore, Martin Smith, the President, CEO, and Duly Authorized Representative of Marco, was never included in said emails, nor was Martin Smith contacted in any other form about actual fraud incidents or fraud prevention tools. In fact, Citizens Bank failed to discuss fraud prevention tools with Martin Smith until after the embezzlement was discovered.

85.     Over the years, Rod Vingle, James Nealon, and Frank Livorio had several meetings and annual reviews with Martin Smith regarding Marco's accounts with Citizens Bank; however, not once did they notify Martin Smith of suspicious or fraudulent activity or discuss any tools to prevent fraud. Rather, Citizens Bank contacted only O'Neill, the embezzler, regarding these high alert fraud incidents and potential fraud prevention tools, providing her the roadmap to successfully steal millions of dollars from Marco.

86.     It was not until after the internal and external fraud was discovered, that a representative from Citizens Bank contacted Martin Smith to discuss the tools and services offered by Citizens Bank to prevent fraud.

87.     It was not until after the internal and external fraud was discovered, that in March 2019, Citizens Bank advised Martin Smith to adopt a fraud prevention program, known as Positive Pay and provided Martin Smith access to the Positive Pay Program.

88.     Even after Marco notified Citizens Bank of the fraudulent activity in early 2019, fraudulent checks continued to be presented against Marco's accounts payable account and cashed

by Citizens Bank until June 14, 2019. Furthermore, Citizens Bank allowed debits to be fraudulently withdrawn from Marco's account until July 12, 2019.

89.     After the internal and external fraud was discovered, Marco contacted Kolby Baker, another Citizens Bank employee, and Frank Livorio on multiple occasions to attempt to work with Citizens Bank to find a resolution to this matter. However, in response to Martin Smith's communications to Kolby Baker and Frank Livorio, seeking to have meaningful discussion to resolve these issues, Citizens Bank sent a letter to Marco, denying any liability and informing Marco that its accounts would be closed.

90.     Citizens Bank knew or should have known that Marco's accounts were exposed to potential fraud and embezzlement both from outside and inside Marco's organization, as indicated by its insufficient efforts to protect against such fraud.

91.     Based on the types of fraud Marco was at risk of suffering, Citizens Bank efforts to prevent and protect against such fraud were sorely lacking, in that there was no communication whatsoever with Martin Smith, the President, CEO and principal owner of Marco, but instead Citizens only communicated with the embezzler herself, providing the roadmap and tools to successfully defraud Marco out of millions of dollars.

92.     All of the losses to Marco's accounts, as a result of O'Neill's embezzlement scheme and Jones' external fraud, could have and should have been prevented by Citizens Bank.

93.     In addition to the $8.7 million Marco has lost from O'Neill's embezzlement scheme and the $378,000 Marco has lost from Jones' external fraud, Marco has suffered additional damage to its reputation as well as lost business opportunities and lost profits as a result of the media attention surrounding O'Neill's embezzlement.

## COUNT I–COMMON LAW PROFESSIONAL NEGLIGENCE (RESTATEMENT OF TORTS (SECOND) § 299A)

94.     Marco hereby incorporates by reference the averments contained in all prior paragraphs of the within Amended Complaint as if set forth in full herein.

95.     Citizens Bank had a duty to identify fraudulent signatures or potentially fraudulent signatures on Service Orders/Services Requests and Token Authentication Registration forms and reject suspicious documents or require additional information/verification in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

96.     Citizens Bank had a duty to render services, including electronic transfers and wire transfers from Marco accounts to other accounts, in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

97.     Citizens Bank had a duty to inform Marco about suspicious activity, potentially fraudulent activity, and actual fraudulent activity in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

98.     Citizens Bank had a duty to inform Marco about fraud prevention tools in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

99.     Citizens Bank had a duty to identify and handle altered and duplicate checks presented for payment by Jones which were drawn from Marco accounts in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

20

100.   Citizens Bank breached its duties in several ways, included but not limited to:

   a.   By failing to identify, question, or reject the forged signature of Martin Smith on a Service Request form, deeming O'Neill System Administrator with full authority to manage the Money Manager GPS System;

   b.   By failing to identify, question, or reject the forged signature of Martin Smith on a Token Authentication Registration form, providing O'Neill multiple tokens which gave her full undivided access to engage in an embezzlement scheme against Marco;

   c.   By failing to obtain signatures on such forms in person, or to require the forms to be notarized and witnessed;

   d.   By failing to ascertain O'Neill's authority to initiate electronic transfers and wire transfers from Marco accounts;

   e.   By failing to require the authority of Martin Smith, the owner and duly authorized representative of Marco, before authorizing and approving electronic transfers and wire transfers from Marco accounts as directed by O'Neill;

   f.   By failing to have internal controls in place to prohibit or to identify fraudulent behavior;

   g.   By failing to adhere to internal controls that seek to prevent fraudulent behavior;

   h.   By failing to inform Martin Smith, the owner and duly authorized representative of Marco, about suspicious activity, potentially fraudulent activity, and actual fraudulent activity concerning Marco accounts;

i.       By failing to inform Martin Smith, the owner and duly authorized representative of Marco, about fraud prevention tools;

j.       By failing to inspect checks for alterations and duplicates;

101.    As a direct and proximate result of Citizens Bank's negligent conduct, Citizen Bank caused damages in excess of $8.7 million to Marco.

102.    In addition to the more than $8.7 million Marco has lost from internal and external fraud, Marco has suffered consequential damages in the form of damage to its reputation, as well as lost business opportunities and lost profits, which are recoverable to Plaintiffs as consequential damages as they were easily foreseeable to Defendant.

103.    Citizens Bank was grossly negligent and sufficiently wanton, willful and reckless as to give rise to an award of punitive damages.

WHEREFORE, Plaintiff, Marco Contractors, Inc., respectfully requests judgment in its favor and against Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank as follows:

a.       Direct damages in excess of $75,000;

b.       Consequential damages based on damage to reputation, loss of business, and loss of profits which were easily foreseeable to Defendant;

c.       Punitive damages;

d.       All costs and attorneys' fees incurred by Plaintiff in bringing this Action, and;

e.       Interest and such further relief as this Court may deem just and proper.

## COUNT II–NEGLIGENCE UNDER THE PENNSYLVANIA COMMERCIAL CODE (13 Pa.C.S.A. §3405(b) and §4401)

104.    Marco hereby incorporates by reference the averments contained in all prior paragraphs of the within Amended Complaint as if set forth in full herein.

22

105.     The Pennsylvania Commercial Code includes a series of provisions that govern bank transactions and remedies for violations of security standards and other issues relating to bank deposits and collections, including the following:

> A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank.

13 Pa.C.S.A. §4401(a).

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

13 Pa.C.S.A. §3405(b).

106.     In accordance with the above statutory provisions, Citizens Bank had a duty to exercise ordinary care in identifying fraudulent signatures or potentially fraudulent signatures on Service Orders/Services Requests and Token Authentication Registration forms and rejecting suspicious documents or requiring additional information/verification in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

107.     Citizens Bank had a duty to exercise ordinary care in identifying and handling altered and duplicate checks presented for payment by Jones which were drawn from Marco accounts in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

108.     Citizens Bank breached its duties in several ways, included but not limited to:

a.     By failing to identify, question, or reject the forged signature of Martin Smith on a Service Request form, deeming O'Neill System Administrator with full authority to manage the Money Manager GPS System;

b.     By failing to identify, question, or reject the forged signature of Martin Smith on a Token Authentication Registration form, providing O'Neill multiple tokens which gave her full undivided access to engage in an embezzlement scheme against Marco;

c.     By failing to obtain signatures on such forms in person, or to require the forms to be notarized and witnessed;

d.     By failing to have internal controls in place to prohibit or to identify fraudulent behavior;

e.     By failing to adhere to internal controls that seek to prevent fraudulent behavior;

f.     By failing to inspect checks for alterations and duplicates;

109.     As a direct and proximate result of Citizens Bank's negligent conduct, Citizen Bank caused damages in excess of $8.7 million to Marco.

110.     In addition to the more than $8.7 million Marco has lost from internal and external fraud, Marco has suffered consequential damages in the form of damage to its reputation, as well as lost business opportunities and lost profits, which are recoverable to Plaintiffs as consequential damages as they were easily foreseeable to Defendant.

111.     Citizens Bank was grossly negligent and sufficiently wanton, willful and reckless as to give rise to an award of punitive damages.

WHEREFORE, Plaintiff, Marco Contractors, Inc., respectfully requests judgment in its favor and against Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank as follows:

      a.      Direct damages in excess of $75,000;

      b.      Consequential damages based on damage to reputation, loss of business, and loss of profits which were easily foreseeable to Defendant;

      c.      Punitive damages;

      d.      All costs and attorneys' fees incurred by Plaintiff in bringing this Action, and;

      e.      Interest and such further relief as this Court may deem just and proper.

## COUNT III–NEGLIGENCE UNDER THE PENNSYLVANIA COMMERCIAL CODE (13 Pa.C.S.A. §4A-204(a))

112.    Marco hereby incorporates by reference the averments contained in all prior paragraphs of the within Amended Complaint as if set forth in full herein.

113.    Article 4A of the Pennsylvania Commercial Code includes a series of provisions that govern bank transactions and remedies, specifically with regard to wire transfers and electronic fund transfers, including the following provision from 13 Pa.C.S.A. §4A-204(a), which states in pertinent part:

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is not authorized and not effective as the order of the customer under section 4A202 (relating to authorized and verified payment orders) or not enforceable, in whole or in part, against the customer under section 4A203 (relating to unenforceability of certain verified payment orders), the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.

114.    In accordance with the above statutory provision, Citizens Bank had a duty to identify fraudulent signatures or potentially fraudulent signatures on Service Orders/Services

Requests and Token Authentication Registration forms and reject suspicious documents or require additional information/verification in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

115.    Citizens Bank had a duty to render services, including electronic transfers and wire transfers from Marco accounts to other accounts, in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

116.    Citizens Bank had a duty to have internal controls in place to prohibit or to identify fraudulent behavior in accordance with commercial standards and practices commonly followed in the banking community.

117.    Citizens Bank had a duty to adhere to internal controls that seek to prevent fraudulent behavior in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

118.    Citizens Bank breached its duties in several ways, included but not limited to:

    a.    By failing to identify, question, or reject the forged signature of Martin Smith on a Service Request form, deeming O'Neill System Administrator with full authority to manage the Money Manager GPS System;

    b.    By failing to identify, question, or reject the forged signature of Martin Smith on a Token Authentication Registration form, providing O'Neill multiple tokens which gave her full undivided access to engage in an embezzlement scheme against Marco;

      c.     By failing to obtain signatures on such forms in person, or to require the forms to be notarized and witnessed;

      d.     By failing to ascertain O'Neill's authority to initiate electronic transfers and wire transfers from Marco accounts;

      e.     By failing to require the authority of Martin Smith, the owner and duly authorized representative of Marco, before authorizing and approving electronic transfers and wire transfers from Marco accounts as directed by O'Neill;

      f.     By failing to have internal controls in place to prohibit or to identify fraudulent behavior;

      g.     By failing to adhere to internal controls that seek to prevent fraudulent behavior;

119.    As a direct and proximate result of Citizens Bank's negligent conduct, Citizen Bank caused damages in excess of $8.7 million to Marco.

120.    In addition to the more than $8.7 million Marco has lost from internal fraud, Marco has suffered consequential damages in the form of damage to its reputation, as well as lost business opportunities and lost profits, which are recoverable to Plaintiffs as consequential damages as they were easily foreseeable to Defendant.

121.    Citizens Bank was grossly negligent and sufficiently wanton, willful and reckless as to give rise to an award of punitive damages.

WHEREFORE, Plaintiff, Marco Contractors, Inc., respectfully requests judgment in its favor and against Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank as follows:

      a.     Direct damages in excess of $75,000;

b.      Consequential damages based on damage to reputation, loss of business, and loss of profits which were easily foreseeable to Defendant;

c.      Punitive damages;

d.      All costs and attorneys' fees incurred by Plaintiff in bringing this Action, and;

e.      Interest and such further relief as this Court may deem just and proper.

## COUNT IV–NEGLIGENCE UNDER THE PENNSYLVANIA COMMERCIAL CODE (13 Pa.C.S.A. §4403)

122.    Marco hereby incorporates by reference the averments contained in all prior paragraphs of the within Amended Complaint as if set forth in full herein.

123.    In late February 2019, Marco informed Citizens Bank of suspicious, potentially fraudulent, activity. Shortly thereafter, O'Neill's embezzlement and Jones theft were discovered and recognized by Citizens Bank.

124.    Upon discovery, Citizens Bank was put on notice to stop the payment of all fraudulent checks and electronic transfers.

125.    However, fraudulent checks continued to be presented against Marco's accounts and cashed by Citizens Bank until June 14, 2019. Furthermore, Citizens Bank allowed debits to be withdrawn from Marco's account until July 12, 2019.

126.    Citizens Bank had a duty pursuant to 13 Pa.C.S.A. §4403, which states in pertinent part:

**(a)** ***Right of customer to stop payment.*** **—** A customer or any person authorized to draw on the account if there is more than one person may stop payment of any item drawn on the customer's account or close the account by an order to the bank describing the item or account with reasonable certainty received at a time and in a manner that affords the bank a reasonable opportunity to act on it before any action by the bank with respect to the item described in section 4303 (relating to when items subject to notice, stop-payment order, legal process or set-off; order in which

28

items may be charged or certified). If the signature of more than one person is required to draw on an account, any of these persons may stop payment or close the account.

127.     Thus, Citizens Bank had a duty to stop payments on items drawn from Marco's accounts in early 2019, as directed by Martin Smith, the owner and duly authorized representative of Marco.

128.     Citizens Bank breached said duty by continuing to allow fraudulent checks to be presented against Marco's accounts and cashed by Citizens Bank until June 14, 2019. Furthermore, Citizens Bank breached said duty by allowing debits to be withdrawn from Marco's account until July 12, 2019.

129.     As a direct and proximate result of Citizens Bank's negligent conduct, Citizen Bank caused substantial monetary damage to Marco.

130.     In addition to the more than $8.7 million Marco has suffered from the internal and external fraud, Marco has suffered consequential damages in the form of damage to its reputation, as well as lost business opportunities and lost profits, which are recoverable to Plaintiffs as consequential damages as they were easily foreseeable to Defendant.

131.     Citizens Bank was grossly negligent and sufficiently wanton, willful and reckless as to give rise to an award of punitive damages.

WHEREFORE, Plaintiff, Marco Contractors, Inc., respectfully requests judgment in its favor and against Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank as follows:

a.     Direct damages in excess of $75,000;

b.     Consequential damages based on damage to reputation, loss of business, and loss of profits which were easily foreseeable to Defendant;

c.     Punitive damages;

    d.    All costs and attorneys' fees incurred by Plaintiff in bringing this Action, and;

    e.    Interest and such further relief as this Court may deem just and proper.

### COUNT V–NEGLIGENT MISREPRESENTATION

132.    Marco hereby incorporates by reference the averments contained in all prior paragraphs of the within Amended Complaint as if set forth in full herein.

133.    Citizens Bank made material representations to Marco, its customer, indicating that it would render services, including electronic transfers and wire transfers from Marco accounts to other accounts, in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

134.    Citizens Bank made material representations to Marco, its customer, indicating that it would inform Marco about suspicious activity, potentially fraudulent activity, and actual fraudulent activity and inform Marco about fraud prevention tools.

135.    Citizens Bank made material representations to Marco, its customer, indicating that it would have internal controls in place to prohibit or to identify fraudulent behavior, in accordance with its own policies and procedures, as well as in accordance with commercial standards and practices commonly followed in the banking community.

136.    Said representations were made by Citizens Bank under circumstances in which Citizens Bank knew or ought to have known that such material representations were false.

137.    Said representations were made by Citizens Bank with the intention of inducing Marco to bank with Citizens Bank.

138.    In justifiable reliance on the negligent and material misrepresentations of Citizens Bank, Marco held bank accounts with Citizens Bank, directly and proximately resulting in damage to Marco in an amount in excess of $8.7 million.

139.    In addition to the $8.7 million Marco has lost from internal and external fraud, Marco has suffered consequential damages in the form of damage to its reputation, as well as lost business opportunities and lost profits, which are recoverable to Plaintiffs as consequential damages as they were easily foreseeable to Defendant, and are the direct and proximate result of Citizens Bank's negligent misrepresentations.

140.    The representations of Citizens Bank were grossly negligent and sufficiently wanton, willful and reckless as to give rise to an award of punitive damages.

WHEREFORE, Plaintiff, Marco Contractors, Inc., respectfully requests judgment in its favor and against Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank as follows:

a.    Direct damages in excess of $75,000;

b.    Consequential damages based on damage to reputation, loss of business, and loss of profits which were easily foreseeable to Defendant;

c.    Punitive damages;

d.    All costs and attorneys' fees incurred by Plaintiff in bringing this Action, and;

e.    Interest and such further relief as this Court may deem just and proper.

## COUNT VI–CONVERSION UNDER THE PENNSYLVANIA COMMERCIAL CODE (13 Pa.C.S.A. §3420)

141.    Marco hereby incorporates by reference the averments contained in all prior paragraphs of the within Amended Complaint as if set forth in full herein.

142.    By failing to require the authority of Martin Smith, the owner and duly authorized representative of Marco, before authorizing and approving electronic transfers and wire transfers, as directed by O'Neill, from Marco accounts, Citizens Bank deprived Marco of its rights to use funds without its consent and without legal justification.

143.    By failing to inspect the checks presented by Jones for alteration and duplication before cashing, Citizens Bank deprived Marco of its rights to use funds without its consent and without legal justification.

144.    Thus, the conduct of Citizens Bank constitutes conversion as set forth in 13 Pa.C.S.A. §3420.

145.    As a direct and proximate result of Citizens Bank's conversion, Citizen Bank caused substantial monetary damage to Marco.

146.    In addition to the more than $8.7 million Marco has suffered from internal and external fraud, Marco has suffered consequential damages in the form of damage to its reputation, as well as lost business opportunities and lost profits, which are recoverable to Plaintiffs as consequential damages as they were easily foreseeable to Defendant, and are the direct and proximate result of Citizens Bank's conversion.

147.    Citizens Bank's conversion was grossly negligent and sufficiently wanton, willful and reckless as to give rise to an award of punitive damages.

WHEREFORE, Plaintiff, Marco Contractors, Inc., respectfully requests judgment in its favor and against Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank as follows:

a.    Direct damages in excess of $75,000;

b.    Consequential damages based on damage to reputation, loss of business, and loss of profits which were easily foreseeable to Defendant;

    c.      Punitive damages;

    d.      All costs and attorneys' fees incurred by Plaintiff in bringing this Action, and;

    e.      Interest and such further relief as this Court may deem just and proper.

## COUNT VII–BREACH OF CONTRACT

148.    Marco hereby incorporates by reference the averments contained in all prior paragraphs of the within Amended Complaint as if set forth in full herein.

149.    In the alternative to Marco's negligence claims under common law and statutory law, Citizens Bank is liable to Marco for breach of contract.

150.    At all times relevant, an actual or implied contract existed between Marco and Citizens Bank, pursuant to which Citizens Bank was obligated to handle Marco accounts in accordance with its internal policies and procedures, and in accordance with reasonable commercial banking practices and procedures followed in the industry.

151.    Citizens Banks' duties regarding fraud detection/prevention, and its duties alert and communicate with the customer regarding suspicious activity, potentially fraudulent activity, and actual fraudulent activity were part of Marco's contractual relationship with Citizens Bank.

152.    Citizens Bank materially breached its contractual duties in several ways, included but not limited to:

    a.      By failing to identify, question, or reject the forged signature of Martin Smith on a Service Request form, deeming O'Neill System Administrator with full authority to manage the Money Manager GPS System;

    b.      By failing to identify, question, or reject the forged signature of Martin Smith on a Token Authentication Registration form, providing O'Neill

multiple tokens which gave her full undivided access to engage in an embezzlement scheme against Marco;

c.      By failing to obtain signatures on such forms in person, or to require the forms to be notarized and witnessed;

d.      By failing to ascertain O'Neill's authority to initiate electronic transfers and wire transfers from Marco accounts;

e.      By failing to require the authority of Martin Smith, the owner and duly authorized representative of Marco, before authorizing and approving electronic transfers and wire transfers from Marco accounts as directed by O'Neill;

f.      By failing to have internal controls in place to prohibit or to identify fraudulent behavior;

g.      By failing to adhere to internal controls that seek to prevent fraudulent behavior;

h.      By failing to inform Martin Smith, the owner and duly authorized representative of Marco, about suspicious activity, potentially fraudulent activity, and actual fraudulent activity concerning Marco accounts;

i.       By failing to inform Martin Smith, the owner and duly authorized representative of Marco, about fraud prevention tools;

j.      By failing to inspect checks for alterations and duplicates;

153.    As a direct and proximate result of Citizens Bank's breach of contract, Citizen Bank caused damages in excess of $8.7 million to Marco.

154.    In addition to the more than $8.7 million Marco has lost from internal and external fraud, Marco has suffered consequential damages in the form of damage to its reputation, as well as lost business opportunities and lost profits, which are recoverable to Plaintiffs as consequential damages as they were easily foreseeable to Defendant.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Marco Contractors, Inc., respectfully requests judgment in its favor and against Defendant, Citizens Financial Group, Inc., d/b/a Citizens Bank as follows:

a.    Direct damages in excess of $75,000;

b.    Consequential damages based on damage to reputation, loss of business, and loss of profits which were easily foreseeable to Defendant;

c.    Punitive damages;

d.    All costs and attorneys' fees incurred by Plaintiff in bringing this Action, and;

e.    Interest and such further relief as this Court may deem just and proper.

Respectfully Submitted,

Date: March 5, 2021          Cafardi Ferguson Wyrick Weis + Gabriel llc

By: *s/Christopher A. Cafardi*
    Christopher A. Cafardi, Esquire
    Pa. I.D. No. 90904
    William J. Wyrick, Esquire
    Pa. I.D. No. 70656
    Meghan M. Matscherz, Esquire
    Pa. I.D. No. 325088
2605 Nicholson Road, Suite 2201
Sewickley, PA 15143

Tel: (412) 515-8900
Fax: (412) 515-8901
ccafardi@cfwwg.com
wwyrick@cfwwg.com
mmatscherz@cfwwg.com


Counsel for Plaintiff, Marco Contractors, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2021, the foregoing document was served electronically via the Court's CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Christopher A. Cafardi*

Christopher A. Cafardi, Esquire
*Counsel for Plaintiff Marco Contractors, Inc.*
Pa. I.D. No. 90904

# EXHIBIT 1

1

Dint 1-1907

## Sue O'Neill

**From:** Stumpf, Lori [Lori.Stumpf@Citizensbank.com]
**Sent:** Wednesday, January 17, 2007 2:53 PM
**To:** soneill@marcocontractors.com
**Subject:** Change to Money Manager GPS System Administrator

Hi Sue,

I have attached a new Money Manager Service Request showing you as system administrator. It would be appreciated if you would verify your email address to assure it is correct and have Martin Smith sign at the bottom of the page above his name. You can send the original document back to me at the address below. Once the change is made in the system, you will receive an email advising you of the change. We will be happy to help you set yourself up as a user if you'd like.

I will let you know when I receive the documents so you'll know to look for the email. It takes about five business days to make the change.

Let me know if you have any questions. Thank you.

Best regards,

Lori

*Lori A. Stumpf, CTP*
Vice President
Citizens Bank
2005 Route 286
Pittsburgh, PA 15239
724 327.9529 (Phone)
724 733.5779 (Fax)

---

Use of email is inherently insecure. Confidential information, including account information, and personally identifiable information, should not be transmitted via email, or email attachment. In no event shall Citizens or any of its affiliates accept any responsibility for the loss, use or misuse of any information including confidential information, which is sent to Citizens or its affiliates via email, or email attachment. Citizens does not guarantee the accuracy of any email or email attachment, that an email will be received by Citizens or that Citizens will respond to any email.

This email message is confidential and/or privileged. It is to be used by the intended recipient only. Use of the information contained in this email by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please notify the sender immediately and promptly destroy any

1/17/2007

# EXHIBIT 2

 **Citizens Bank**

### Money Manager GPS
### Service Request

| 2 |

**Customer Name:** Marco Contractors, Inc.

☐ New Request
☒ Modification to Existing Service Request

Customer requests that Citizens provide access to the Money Manager GPS System for the Modules selected below by:

| Features applicable to all accounts on the Money Manager GPS System | | | |
|---|---|---|---|
| ☐ | Information Reporting | ☐ | Stop Payments |
| ☐ | Transfers | ☐ | Positive Pay |

| Administrative Control Options | |
|---|---|
| ☒ | **Standard Control Feature** A single individual, the System Administrator, has full authority to manage the Money Manager GPS System with the power to create and entitle additional users. |
| **System Administrator** | **Email Address** |
| Sue O'Neill | soneill@marcocontractors.com |

| Dual Control Feature | |
|---|---|
| ☐ | **Dual Control Feature** This feature adds another layer of review and control over the administration of the Money Manager GPS System. Two individuals, a User Manager and an Approval Manager, need to be designated. |
| **User Manager** | **Approval Manager** |
| **Email Address:** | **Email Address:** |

Unless otherwise instructed, the existing System Administrator will become the User Manager upon selection of the Dual Control feature.

| | Designated Account Features | | | |
|---|---|---|---|---|
| Account Number | | | | |
| **Initiation Modules** | | | | |
| ACH Initiations Services | ☐ | ☐ | ☐ | ☐ |
| Wires Domestic Initiation (includes Book & Draw down capability) | ☐ | ☐ | ☐ | ☐ |
| Wires International Initiation | ☐ | ☐ | ☐ | ☐ |

| ☐ | **Single User Wire Release Authority** This feature enables the System Administrator to assign User Ids to individuals which grant such individuals full authority to unilaterally initiate wire transfers. |
|---|---|

Customer certifies that it has authorized each individual designated above to exercise the full range of powers granted to their respective positions (as such powers are set out in the Cash Management Services Terms and Conditions). Further, Customer hereby authorizes Citizens to provide each such individual with access to the Money Manager GPS System commensurate with the access required to carry out the duties of the position to which they have been appointed.

Requested this _____ day of _January_, 2007

By: _____
Duly Authorized Person's Signature

Name: Martin R. Smith
(Duly Authorized Person's Printed Name)

Title: President
(Duly Authorized Person's Printed Title)

# EXHIBIT 3

**Sue O'Neill**

3

From:           clientservices@cfgcustomers.com
Sent:           Monday, February 26, 2007 2:30 PM
To:             soneill@marcocontractors.com
Subject:        Your requested Money Manager GPS (TM) Information

Dear Money Manager GPS customer:

Per your request, listed below is your password to login to Money Manager GPS and a link to the product web site.

Your password: 40460a

https://www.citizensbankmoneymanagerGPS.com

Once you have logged in with your user ID and password, you will be asked to change your password.

Thank you for using Money Manager GPS.  We hope that we have satisfied your request.  If you need further assistance, please contact our Cash Management Client Services at 1-877-550-5933.

Regards,

Cash Management Client Services

Member  FDIC.
TM & © Citizens Financial Group, Inc. All rights reserved.

------------------------------------------

Use of e-mail is inherently insecure. Confidential information, including account information, and personally identifiable information, should not be transmitted via e-mail, or e-mail attachment. In no event shall Citizens Financial Group or any of its affiliates accept any responsibility for the loss, use or misuse of any information including confidential information, which is sent to them via e-mail, or e-mail attachment. Citizens Financial Group does not guarantee the accuracy of any e-mail or e-mail attachment, that an e-mail will be received by them or that they will respond to any e-mail.

This e-mail message is confidential and/or privileged. It is to be used by the intended recipient only. Use of the information contained in this e-mail by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please notify the sender immediately and promptly destroy any record of this e-mail. Internet e-mails are not necessarily secure. Citizens Financial Group does not accept responsibility for changes made to this message after it was sent.

While all reasonable care has been taken to avoid the transmission of viruses, it is the responsibility of the recipient to ensure that the onward transmission, opening or use of this message and any attachments will not adversely affect its systems or data. No responsibility is accepted by Citizens Financial Group in this regard and the recipient should carry out such virus and other checks as it considers appropriate.

1

# EXHIBIT 4

Page 1 of 1

4

## Sue O'Neill

| | |
|---|---|
| **From:** | Weber, Olivia [Olivia.Weber@Citizensbank.com] |
| **Sent:** | Monday, February 26, 2007 4:29 PM |
| **To:** | soneill@marcocontractors.com |
| **Cc:** | Stumpf, Lori |
| **Subject:** | Money Manager GPS Sysadmin change |

Hi Sue,

I just wanted to conform with you that the change to have you listed as the Sysadmin for Money Manager GPS has been completed, you may call our Client Services area and they will help you with the set up of your self as a User. Their phone number is 1-877-331-2567.

Please let me know if you have any questions.


Thank you

Olivia M. Weber, CTP
Officer Cash Management Analyst
Mid-Atlantic Cash Management
Citizens Bank
Phone Number 412 867 2552
Fax Number 412 867 2603
email:olivia.weber@citizensbank.com

**Use of email is inherently insecure. Confidential information, including account information, and personally identifiable information, should not be transmitted via email, or email attachment. In no event shall Citizens or any of its affiliates accept any responsibility for the loss, use or misuse of any information including confidential information, which is sent to Citizens or its affiliates via email, or email attachment. Citizens does not guarantee the accuracy of any email or email attachment, that an email will be received by Citizens or that Citizens will respond to any email.**

**This email message is confidential and/or privileged. It is to be used by the intended recipient only. Use of the information contained in this email by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please notify the sender immediately and promptly destroy any record of this email.**

2/26/2007

# EXHIBIT 5

 **Citizens Bank**

**Brian Burke**
Senior Vice President
Cash Management

Exchange Place
53 State Street Building
Boston, MA. 02109

5

11/17/08

Sue O'Neill
Marco Contractors
100 Commonwealth Dr
Warrendale PA, 15095

Dear Sue O'Neill:

In an effort to provide you with tools to help protect your online data, Citizens Bank is requiring all **MM GPS customers** to have a RSA SecurID® token key fob(s) in order to access the MM GPS system. This new feature will help protect your company's financial information and reduce the risk of a financial loss to both your company and Citizens Bank.

We have tried several times to reach you in order to provide your company with this new security device. We have enclosed the MM GPS Token Authentication Registration Agreement for System Administrators and where applicable, for your Approval Manager, which needs to be completed, signed and faxed back to Client Services at 1-401-441-5557 or 1-866-204-6123.

**You will have fifteen days from the date of this letter to fax in your MM GPS Token Authentication Registration Agreement. If Citizens Bank does not receive the MM GPS Token Authentication Registration Agreement within fifteen days from the date of this letter your access to MM GPS will be suspended. Citizens Bank will disable your access and you will not be able to use the System.**

Your Money Manager GPS Service is governed by contractual Terms and Conditions which give Citizens Bank the right to suspend the Service. Upon receipt by Citizens Bank of a MM GPS Token Authentication Registration Agreement from your company, in a form that is acceptable to Citizens Bank, the Bank will re-instate your access to MM GPS.

If you have any questions, we recommend that you call your Cash Management Officer or Client Services at 1-877-550-5933 (New England), 1-877-331-2567 (Mid-Atlantic) or 1-401-464-3086 (International), Monday through Friday from 7:00 a.m. to 6:00 p.m. ET.

Citizens Bank values your business and wants to bring you this new security feature, just one of the latest ways Citizens Bank is helping its cash management customers safeguard their online data.

Sincerely,

Brian Burke
Senior Vice President
Cash Management Access Products Manager

Enclosures

RBS  Citizens Bank is a brand name of RBS Citizens, N.A. and Citizens Bank of Pennsylvania. Citizens Bank of Pennsylvania is a separate bank and not part of RBS Citizens, N.A. Member FDIC

# EXHIBIT 6

 **Citizens Bank**

\# 728086

6

### Money Manager GPS Token Authentication Registration
### PRIMARY SYSTEM ADMINISTRATOR ONLY

1. Please complete the following information for all requests and FAX this request to:
   Within the United States:        866-204-6123
   Internationally:                      401-441-5557

| User Information (Please Print Clearly) | |
|---|---|
| Customer Name        Marco Contractors | Money Manager GPS Customer ID        pmarcon1 |
| Money Manager GPS User ID | Sysadmin |
| User First Name, User Last Name (Please type) | Sue O'Neill |
| Work Street Address: | 100 Commonwealth Dr |
| Work City, State, Zip | Warrendale PA, 15095 |
| Work Email address: | soneill@marcocontractors.com |

| | |
|---|---|
| Number of Tokens Requested for you:        1 | Number of New Tokens Requested for other Users:        2 |

***The User identified above will be responsible for the security and management of all tokens assigned as described in the Terms and Conditions.***

2. The information provided below will be kept confidential by Citizens Bank's Information Security Group.  It will be used to verify a Customer in the event that the Customer needs to contact the Information Security group.

**User Security Information (Please Print Clearly)**

Last four digits of your Social Security number:  ███

City, State, and Country where you were born:  *Sewickley, PA  USA*

Month and Day of your birth:  01·29    Mother's maiden name  *Cook*

### 3. User Signature
User acknowledges that the Security Device is proprietary and confidential.  User shall be responsible for security of the card and its use.

User Signature:  *Sue G O'Neill*        Date:  11·26·08

### 4. Duly Authorized Representative Signature

Requested this  26th  day of  *November* , *2008*

Customer Signature

By: _____

Name:  *Martin K. Smith*

Title:  *President*

| | |
|---|---|
| (Duly Authorized Individual's Signature) | If Joint Signature Required:  **Counter Signature** |
| (Duly Authorized Individual's Printed Name) | By: _____ |
| (Duly Authorized Individual's Printed Title) | (Duly Authorized Individual's Signature) |
| | Name: _____ |
| | (Duly Authorized Individual's Printed Name) |
| | Title: _____ |
| | (Duly Authorized Individual's Printed Title) |

# EXHIBIT 7

8

From: McHanon, Devin (n009346)

Subject: Dual Approval Notification

Received: 05/13/2014 04:20 PM

Dear Sue O'Neil,

Cybercrime is an ever increasing threat to the security of online banking transactions. RBS Citizens is taking steps to help our clients combat this threat. On 5/21/2014, RBS Citizens will be activating Dual Approval controls for wire transfers and/or ACH functionality on Money Manager GPS. Dual Approval controls help prevent fraud by requiring two individual users to create and release wire transfers and ACH payments.

Another effective fraud prevention tool for online banking transactions is Trusteer Rapport, a free anti-malware application available to all RBS Citizens clients. This software complements and adds additional protection for users who already have anti-virus software on their machines. Since anti-virus programs are usually not able to detect the type of malware that fraudsters are using to attack online banking transactions. Click on the ad at the top right corner of the Money Manager GPS home screen to install this valuable tool.

For more information, please read "Dual Approval Guide" on the Money Manager GPS Events page found under the Help tab.

We will soon be reaching out to you by phone to offer our assistance with preparing for these upcoming changes.

If you feel you and your Money Manager GPS users are prepared for this change, then please reply to this message with a brief confirmation that you are aware of these changes and are prepared for their implementation.

If you have any further questions or inquiries, please reach out to Client Services for assistance

# EXHIBIT 8

9

To: CORY, PAULA (e210276)
Subject: Token Order ATTN: Devin
Sent: 05/20/2014 10:07 AM

ould like to request one additional token.

ould like to confirm the mailing address should be:

rco Contractors, Inc.
) Commonwealth Drive
rrendale, PA 15086

DONE   DELETE

# EXHIBIT 9

Sue O'Neill

| | |
|---|---|
| **From:** | Kaveny, Eric R [Eric.R.Kaveny@rbscitizens.com] |
| **Sent:** | Friday, September 05, 2014 9:55 AM |
| **To:** | Sue O'Neill |
| **Cc:** | Nealon, James A; Jones, Dick E |
| **Subject:** | RE: Possible counterfeit 8251 LJ |

Good morning Sue,

Per our discussion this morning, I wanted to send over my contact information below.  If you have any questions while you're reviewing the documents for Positive Pay or any question in general about fraud, please give me a call or email.

Thanks and have a nice weekend...

Eric

**Eric R. Kaveny, CTP**
VP, Treasury Solutions Specialist
Treasury Solutions
RBS Citizens

525 William Penn Place
Mail Code PW2665
Pittsburgh, PA 15219

Phone:    412-867-4032
Mobile:    412-295-7809
Facsimile: 412-567-5902
eric.r.kaveny@rbscitizens.com

**RBS** Citizens

**From:** Sue O'Neill [mailto:soneill@marcocontractors.com]
**Sent:** Friday, September 05, 2014 7:42 AM
**To:** Johnson, Lisa F
**Cc:** Nealon, James A; Fraud-On-Us New England; Kaveny, Eric R
**Subject:** Re: Possible counterfeit 8251 LJ

I'm sorry, there are 3.  All cashed the same day Aug. 27th. all made out to people in Georgia.  The other check number is 94931.

On Thu, Sep 4, 2014 at 2:55 PM, Johnson, Lisa F <Lisa.F.Johnson@rbscitizens.com> wrote:

I have placed their account on our watch list

*Lisa F. Johnson*

Lisa F. Johnson

1

Operations Analyst I

RI Fraud & ID Theft

RBS Citizens Business Services


Lisa.F.Johnson@RBScitizens.com

1 Citizens Dr

ROP325

Riverside RI 02915

401-282-2260 (Recored line)

888-898-2076 (check fraud)

888-300-4822 (ID theft)

888-288-0516 (Fax)




**From:** Nealon, James A
**Sent:** Thursday, September 04, 2014 2:55 PM
**To:** Johnson, Lisa F; 'soneill@marcocontractors.com'
**Cc:** Fraud-On-Us New England; Kaveny, Eric R
**Subject:** RE: Possible counterfeit 8251 LJ


Lisa,

Please pay the second check.   The one that already cleared is fraudulent.


Sue,

I'll have Eric Kaveny reach out to you again.


Jim


James A. Nealon

Senior Vice President

Commercial Banking

RBS Citizens

525 William Penn Place,  26th floor

Pittsburgh, PA  15219


Office:   412-867-2540

Mobile:   412-389-7630

Jim.Nealon@rbscitizens.com


**From:** Johnson, Lisa F
**Sent:** Thursday, September 04, 2014 2:21 PM
**To:** Johnson, Lisa F; Nealon, James A
**Cc:** Fraud-On-Us New England
**Subject:** RE: Possible counterfeit 8251 LJ


Hello,

My deadline is going to be coming up. Were you able to get the approval
for this? This will be the only reminder I will be sending, if we don't receive
an answer by 3 PM this check/checks will be returned.


*Lisa F. Johnson*

Lisa F. Johnson

Operations Analyst I

RI Fraud & ID Theft

RBS Citizens Business Services

Lisa.F.Johnson@RBScitizens.com

*1 Citizens Dr*

*ROP325*

*Riverside RI 02915*

*401-282-2260 (Recored line)*

*888-898-2076 (check fraud)*

*888-300-4822 (ID theft)*

*888-288-0516 (Fax)*

**From:** Johnson, Lisa F
**Sent:** Thursday, September 04, 2014 11:12 AM
**To:** Nealon, James A
**Cc:** Fraud-On-Us New England; Johnson, Lisa F
**Subject:** Possible counterfeit 8251 LJ

Checks are coming through our fraud report for duplicate serial number. The check for 3,562.32 check style is different could be possible counterfeit. Can you please call the customer and confirm that these check are ok? The check for $3,562.32 (top check) was cashed on 08/27/2014.

*Lisa F. Johnson*

Lisa F. Johnson

Operations Analyst I

RI Fraud & ID Theft

RBS Citizens Business Services

Lisa.F.Johnson@RBScitizens.com

*1 Citizens Dr*

*ROP325*

*Riverside RI 02915*

*401-282-2260 (Recored line)*

*888-898-2076 (check fraud)*

*888-300-4822 (ID theft)*

*888-288-0516 (Fax)*

Use of email is inherently insecure. Confidential information, including account information, and personally identifiable information, should not be transmitted via email, or email attachment. The information in this email

# EXHIBIT 10

**Check Image**                                                                          Print

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

JACQUELYN JONES                    CUSTOMER INQUIRY, CALL    913-599-9914          CHECK# 0972
40 STATION DR. APT#509                                                                    0
WYANDANCH,NY 11798                                              DATE:  06/07/15

PAY TO THE
ORDER OF                    American Labor                              $56.90

Fifty Six and 90/100 Dollars                                                    DOLLARS

Bank
WYANDANCH,NY 11798          MEMO:                            100000397PE
                           AUTHORIZATION#            0607        TRANSACTION#         25694
                           THIS PAYMENT HAS BEEN AUTHORIZED BY YOUR DEPOSITOR

                           SIGNED:  JACQUELYN JONES
ACCEPT-A-CHECK             BY: AUTHORIZED REPRESENTATIVE,        American Labor

⑈000972⑈  ⑈036076150⑈  6101338251⑈

ISN# 033301282845
Date 6/15/2015

20150615_CHRD_KC_CMS9BZ1_033301282845

PAY TO THE ORDER OF
COMMERCE BANK,
PEORIA, IL 61604-3623
▶101000019◀
FOR DEPOSIT ONLY
AMERICAN LABOR
SERVICES LLC
0652047

CLOSE

This is an image of an item (check, substitute check, or debit memo) which has posted to your account. Items resulting in a non-sufficient funds situation may not have been paid. Unpaid items will show as a credit item in your account history on the business date following the date the item was presented.