# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCO CONTRACTORS, INC. | )<br>)<br>) No. 2:20-cv-237<br>Plaintiff, )<br>vs. ) Judge J. Nicholas Ranjan<br>)<br>CITIZENS FINANCIAL GROUP, INC., )<br>d/b/a CITIZENS BANK, )<br>)<br>Defendant. ) |

**DEFENDANT CITIZENS FINANCIAL GROUP, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| | A. Marco Executes Signature Cards and A Business Resolution Providing Authority to its Controller, Sue O'Neill, and Ratifying All Prior Transactions in Its Accounts. | 2 |
| | B. Marco Generally Released Potential Claims Against Citizens in 2015 and 2017. | 4 |
| III. | LEGAL STANDARD | 5 |
| IV. | ARGUMENT | 6 |
| | A. Marco Authorized All Transactions Made By Sue O'Neill Prior to February 11, 2019. | 6 |
| | B. Marco Released All Claims that Arose On or Before June 16, 2017. | 9 |
| V. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994) ................................................................................................ 3, 5

*Ashcroft v. Iqbal*,
   556 U.S 662 (2009) .................................................................................................. 5, 10, 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 5, 10

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ................................................................................................ 3

*Deutsch v. Wells Fargo Bank, N.A.*,
   2015 WL 3833226 (E.D. Pa. June 19, 2015) ........................................................................ 8

*Diaz v. Rucker*,
   2016 WL 8735711 (E.D. Pa. July 29, 2016) .................................................................. 10, 12

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
   618 F.3d 253 (3d Cir. 2010) ................................................................................................ 13

*Eigen v. Textron Lycoming Reciprocating Engine Div.*,
   874 A.2d 1179 (Pa. Super. 2005) ........................................................................................ 13

*Environmental Equip. & Serv. Co. v. Wachovia Bank, N.A.*,
   741 F.Supp.2d 705 (E.D. Pa. 2010) ...................................................................................... 8

*In re Estate of Belefski*,
   413 Pa. 365 (Pa. 1964) ........................................................................................................ 10

*First Fed. Savings & Loan Assn. of Hazleton v. Office of the State Treasurer*,
   669 A.2d 914 (Pa. 1995) ....................................................................................................... 6

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) .................................................................................... 5, 11, 12

*Leder v. Shinfeld*,
   609 F. Supp. 2d 386 (E.D. Pa. 2009) ................................................................................... 13

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) .................................................................................................. 5

*McClure v. Comm'r Jeffrey T. Haste*,
  2016 WL 695111 (M.D. Pa. Feb. 19, 2016) ...................................................................10, 12

*Menichini v. Grant*,
  995 F.2d 1224 (3d Cir. 1993)..............................................................................................8

*Minielly v. Acme Cryogenics, Inc.*,
  2016 WL 1221640 (E.D. Pa. Mar. 28, 2016).................................................................10, 12

*Muho v. Citibank, N.A.*,
  2015 WL 106677 (N.D. Cal. Jan. 7, 2015) ........................................................................3

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993)..............................................................................................3

*Permenter v. Crown Cork & Seal Co., Inc.*,
  38 F. Supp. 2d 372 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000)................................13

*PFPC Worldwide Inc. v. Lemay*,
  2005 WL 2176828 (W.D. Pa. Sept. 6, 2005)..................................................................9, 10

*Roth v. Old Guard Ins. Co.*,
  850 A.2d 651 (Pa. Super. 2004)..........................................................................................9

*United States v. O'Neill*,
  No. 2:19-331 (W.D. Pa. Oct. 31, 2019) ..............................................................................7

*Vorchheimer v. Phila. Owners Ass'n*,
  903 F.3d 100 (3d Cir. 2018)............................................................................................3, 5

**Other Authorities**

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363
  (2d ed. 1990) ......................................................................................................................3

# I. INTRODUCTION

After more than a year of litigation, four months of discovery, and Defendant Citizens Financial Group, Inc.'s production of 11,000 pages of documents, Plaintiff Marco Contractors, Inc.'s Amended Complaint – filed to avoid a pending Motion for Judgment on the Pleadings – fails to state a claim for numerous reasons. Citizens' Motion to Dismiss focuses on just two: First, Marco authorized Citizens to deal directly with Marco's Controller Sue O'Neill for Marco's banking business—hardly extraordinary, but gutting Marco's premise that Citizens somehow breached duties in doing so. Indeed, that authorization explicitly ratified challenged transactions. Second, Marco signed two releases in exchange for its request for continued financing and acknowledged both times that it had an opportunity to consult with legal counsel before signing.

Marco resorts to speculative allegations "upon information and belief" but with no factual predicate for the belief, only speculation about information that obviously is within its possession. Marco's last-ditch effort to restart its burdensome fishing expedition in search of a claim, which amounts to nothing more than a patchwork of innuendo about what might theoretically be possible, should be rejected. In order to move past the pleadings stage, Marco must assert plausible, non-speculative claims, which it plainly cannot do.

The Amended Complaint's enhanced rhetoric cannot mask the simple fact that Marco executed signature cards and a business resolution in September 2014 that granted O'Neill authority over Marco's accounts and that ratified all prior transactions made in Marco's accounts. These documents are undisputed and foreclose any challenge to fraudulent transactions made by O'Neill. Additionally, Marco executed general releases in June of 2015 and 2017 pursuant to which it expressly released any claims against Citizens, whether known or unknown, that existed as of that date.

This Motion provides the Court with an opportunity to dispose of this matter at the appropriate time – now. Allowing this matter to proceed will unnecessarily burden the Court and the parties. Because Marco's second attempt to allege legally sufficient claims fails, Citizens' Motion to Dismiss should be granted, and any claims relating to transactions made by Marco's Controller, Sue O'Neill, should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Marco Executes Signature Cards and A Business Resolution Providing Authority to its Controller, Sue O'Neill, and Ratifying All Prior Transactions in Its Accounts.

Marco maintained four accounts with Citizens – accounts ending in x8405 (Marco's Operating Account), x8251, x6873, and x4484 (collectively, the "Accounts"). Dkt 64 ¶¶ 9. Marco executed signature cards in September 2006 relating to Accounts ending in x8405, x8251, and x6873 that identified Martin Smith, Aaron Blough, and Darrin Patterson as authorized signers. *See* Declaration of Jeff Tyrrell ("Tyrrell Decl."), **Ex. A** (x8405 signature cards), **Ex. B** (x8251 signature cards), **Ex. C** (x6873 signature cards). Marco executed supplemental signature cards relating to Accounts x8405 and x8251 in September 2014, which removed Aaron Blough and Darrin Patterson and added Sue O'Neill, Nicholas Smith, and Kristienne Vento as authorized signers. *Id.* **Ex. A** (x8405 signature cards), **Ex. B** (x8251 signature cards). In February 2019, Marco opened Account x4484 and executed an initial signature card identifying Martin Smith and Nicholas Smith as authorized signers. *Id.* **Ex. D** (x4484 signature cards). Also in February 2019, Marco executed supplemental signature cards relating to Accounts x8405, x8251, and x6873, which removed, among others, Sue O'Neill and Kristienne Vento as authorized signers for Accounts x8405 and x8251. *Id.* **Ex. A** (x8405 signature cards), **Ex. B** (x8251 signature cards), **Ex. C** (x6873 signature cards).

In the same month that it added O'Neill to signature cards (September 2014), Marco executed a General Deposit Resolution for Single Stockholder Corporations (the "Resolution"). *Id.* **Ex. E.**[1] The Resolution was signed by Martin Smith (President), Sue O'Neill (Controller), Nicholas Smith (Vice President), and Kristienne Vento (Project Accountant). *Id.* Among other things, the Resolution:

- Authorized Martin and Nicholas Smith, O'Neill, and Vento to:

  o Open deposit accounts;

  o "*[C]ontract for any services* offered by [Citizens]";

  o "*[S]ign checks, drafts or other orders* with respect to *any funds*";

  o "[M]ake withdrawals or transfers of funds";

  o "[C]onduct *any and all other lawful business*" with Citizens; and

  o Submit instruments for deposit and collection, and Citizens was "authorized to accept such instruments . . . *without inquiry as to the circumstances of the endorsement or lack of endorsement*";

---

[1] A court may consider undisputedly authentic documents that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This Court should consider the signature cards and Resolution because Marco's claims are based on allegedly unauthorized transactions in the Accounts, and these documents identify the Marco employees authorized to transact in the Accounts. Moreover, Marco is in possession of these documents, and the Amended Complaint does not dispute their authenticity, applicability, or enforceability. *See also* Answer to Counterclaim, Dkt. 47 ¶¶ 15-17, 23-24 (admitting that the signature cards and Resolution are "written documents which speak for themselves"). Indeed, although not necessary to decide this Motion, Marco has admitted in its Responses to Citizens' Requests for Admission that the signature cards and Resolution are authentic and were executed by Martin Smith. *See* **Ex. 1** hereto (Responses to Request Nos. 3-11).
Where, as here, disparities exist between pleadings and a document properly before the court, the document controls. *See Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 & n.8 (3d Cir. 1994); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 464-65 (2d ed. 1990); *see also Muho v. Citibank, N.A.*, 2015 WL 106677, *4 (N.D. Cal. Jan. 7, 2015) (considering signature card despite plaintiff not attaching card to complaint).

- Contemplated that Marco's authorized representatives could delegate their power to others at Marco and that Citizens was "***entitled to rely upon*** such delegations of authority and to ***accept instructions*** from such other persons ***as being fully authorized***" by Marco; and

- Provided that Marco "***ratifie[d] and confirm[ed] any and all transactions*** prior to the date of this Resolution."

*See id.* **Ex. E,** at § 2(a)-(g), 3, 5 (emphasis added).

### B. Marco Generally Releases Potential Claims Against Citizens in 2015 and 2017.

In 2015, Marco's CEO, Martin Smith, executed a Modification Agreement to Revolving Demand Note dated June 30, 2015 on Marco's behalf (the "2015 Modification"). *See* Tyrell Decl., **Ex. F**; Dkt. 64 ¶ 51. As an explicitly agreed part of the consideration exchanged for further extension of credit, the 2015 Modification includes the following broad general release (the "2015 Release"):

> Release of the Bank. The Borrower hereby confirms that as of the date hereof it has no claim, set-off, counterclaim, defense, or other cause of action against the Bank including, but not limited to, a defense of usury, any claim or cause of action at common law, in equity, statutory, or otherwise, in contract or in tort, for fraud, malfeasance, misrepresentation, financial loss, usury, deceptive trade practice, or any other loss, damage or liability of any kind, including, without limitation, any claim to exemplary or punitive damages arising out of any transaction between the Borrower and the Bank. To the extent that any such set-off, counterclaim, defense, or other cause of action may exist or might hereafter arise based on facts known or unknown that exist as of this date, such set-off, counterclaim, defense and other cause of action is hereby expressly and knowingly waived and released by the Borrower. The Borrower acknowledges that this release is part of the consideration to the Bank for the financial and other accommodations granted by the Bank in this Agreement.

Tyrell Decl., **Ex. F**, § 2.2. By signing the 2015 Release, among other things, Martin Smith explicitly acknowledged that Marco had "an opportunity to consult with legal counsel." *See id.*, § 2.16; *compare with* Dkt. 64 ¶ 54.

Two years later, Martin Smith executed an additional Modification on Marco's behalf (the "2017 Modification"). *See* Tyrell Decl., **Ex. G**; Dkt. 64 ¶ 70. The 2017 Modification

contains the same general release ("2017 Release") as the 2015 Modification. Tyrell Decl., **Ex. G**, § 2.2. As in 2015, Smith acknowledged that Marco had "an opportunity to consult with legal counsel" before executing the 2017 Modification. *See id.*, § 2.16; *compare with* Dkt. 64 ¶ 76.

### III. LEGAL STANDARD

When evaluating a Rule 12(b)(6) motion, a court is to accept only the complaint's "well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), which means a plaintiff must allege more than "labels and conclusions" or a "recitation of the elements of a cause of action." *Fowler,* 578 F.3d at 210. "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" are insufficient. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Indeed, a complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In deciding a motion to dismiss, the court should consider the allegations in the complaint, any exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). If documents the court may consider in ruling on a motion to dismiss contradict the allegations in the complaint, the documents control. *See Vorchheimer*, 903 F.3d at 112; *ALA*, 29 F.3d at 859 & n.8; Federal Practice and Procedure § 1363, at 464-65.

## IV. ARGUMENT

### A. Marco Authorized All Transactions Made By Sue O'Neill Prior to February 11, 2019.

In September 2014, Marco executed the signature cards and Resolution, which expressly authorized Sue O'Neill to transact in the Accounts. *Supra* pp. 2-4; Tyrell Decl., **Exs. A-B, E**.[2] This authorization remained in place until O'Neill was removed from the signature cards in February 2019. Additionally, Marco "ratifie[d] and confirm[ed] any and all transactions with the Bank prior to the date of the Resolution [September 19, 2014]." Tyrell Decl., **Ex. E**, § 5. By signing the signature cards and Resolution, Marco directed Citizens to rely on O'Neill's directives from September 19, 2014 forward and to not second-guess her transactions, or any transactions effected prior to that date. As such, Marco cannot challenge any transactions effected by Sue O'Neill prior to February 11, 2019, or indeed any transactions effected prior to September 19, 2014.

Despite more than a year of litigation and Marco's (unsuccessful) attempts in the Amended Complaint to run from other executed agreements with Citizens, the Amended Complaint contains no allegations that call into question the applicability and enforceability of the signature cards and Resolution. Nor could it. These documents are fundamental to a bank-customer relationship, *see, e.g., First Fed. Savings & Loan Assn. of Hazleton v. Office of the State Treasurer*, 669 A.2d 914, 915 (Pa. 1995) ("It is well established that the legal relationship between a financial institution and its depositors is based on contract, and that the contract terms are contained in the signature cards and deposit agreements"); and Marco does not, and cannot,

---

[2] As explained in Citizens' motion to dismiss the initial complaint, O'Neill also was authorized to transact in Marco's Accounts prior to September 2014 due to Marco's grant of authority to her as its Controller. Dkt. 31, pp. 2, 4. However, the Court need not address this issue to resolve this motion due to the clear direction, authorization, and ratification provided in the signature cards and Resolution.

dispute that it had bank accounts in order to function as a business (*see, e.g.,* Dkt. 64 ¶ 9 (identifying the Accounts)) and that it instructed Citizens as to the persons authorized to transact in the Accounts.

None of Marco's allegations regarding purported wrongdoing by Citizens – nor any amount of discovery that Marco requests – can change the fact that Marco designated O'Neill as an authorized signer on the Accounts. First, Marco's after-the-fact complaint that Citizens "only" or "exclusively" communicated with O'Neill is a non-starter. *See* Dkt. 64 ¶¶ 33, 35, 43, 65, 85, 91. As the signature cards and Resolution make clear, at all relevant times, Marco authorized Citizens to transact business and communicate with Marco's appointed Controller, Sue O'Neill, and there is no basis to complain that some select communications should have been directed to the CEO as well.[3] Moreover, as reflected in the Resolution, the parties contemplated that Marco's authorized representatives could delegate their power to others at Marco and that Citizens was "entitled to rely upon such delegations of authority and to accept instructions from such other persons as being fully authorized" by Marco. Tyrell Decl., **Ex. E**, § 3.[4]

Further, although Marco refers to O'Neill as the "embezzler" (Dkt. 64 ¶¶ 85, 91), Marco admits that O'Neill was its Controller (*id.* ¶¶ 11, 15) and does not dispute anywhere in the Amended Complaint that Marco granted her control over the Accounts, which is consistent with her Controller title. Indeed, as Controller, O'Neill was responsible for, "among other things, bookkeeping, payroll processing and bill payments." *United States v. O'Neill*, No. 2:19-331

---

[3] Similarly, Marco has no basis to claim that Citizens was required to communicate specifically with Martin Smith regarding issues with the Accounts. At all relevant times, Marco provided multiple people with authorization relating to the Accounts. Tyrell Decl., **Exs. A-E.**
[4] Although not necessary to decide this Motion, the same is true for the time period prior to the Resolution's execution. *See* Dkt. 31, pp. 2-3, 5.

(W.D. Pa. Oct. 31, 2019), at ECF No. 1. Notably, Marco does not challenge the thousands of legitimate transactions effected over the years by O'Neill, including monthly payroll and vendor payments, and Marco does not allege that anyone other than O'Neill, including Martin or Nick Smith, were responsible for Marco's financial operations. *Id.*; *see generally* Dkt. 64,

The Amended Complaint also does not allege any facts regarding Marco's supervision of O'Neill, *see generally* Dkt. 64, which is fatal because "the Pennsylvania legislature has concluded that customers are better able than banks to minimize the risk of embezzlement."[5] *Env'tl Equip. & Serv. Co. v. Wachovia Bank, N.A.,* 741 F.Supp.2d 705, 715 (E.D. Pa. 2010); *see also Menichini v. Grant*, 995 F.2d 1224, 1233 (3d Cir. 1993) (employers "have a comparative advantage in preventing diversion of their own property by their own employees"); *Deutsch v. Wells Fargo Bank, N.A.*, 2015 WL 3833226, *6 (E.D. Pa. June 19, 2015). By asserting that Citizens was responsible for rooting out internal fraud that Marco itself failed to detect, Marco's claims not only fail to state a claim but, if permitted to proceed, would contravene Pennsylvania law.[6]

At bottom, Marco seeks to shift responsibility for its misplaced trust in O'Neill to Citizens. The Court should reject this theory now because the signature cards and Resolution indisputably establish that Marco cannot challenge any transactions effected by Sue O'Neill prior to February 11, 2019 or any transactions made in the Accounts prior to September 9, 2014. Any claims relating to such transactions should be dismissed.

---

[5] Indeed, despite the fact that O'Neill was Marco's employee, Marco alleges "upon information and belief" that O'Neill was not available prior to 10:00 am to address overdraft issues with Citizens. Dkt. 64 ¶ 79. Obviously then, Marco does not dispute that conferring with Citizens regarding overdrafts in the Accounts was among O'Neill's duties as Marco's Controller.
[6] Additionally, although not necessary to decide this motion, Marco does not dispute that it received regular statements and other transaction confirmations from Citizens relating to the Accounts which enabled it to detect O'Neill's embezzlement. *See generally* Dkt. 64.

### B. Marco Released All Claims that Arose On or Before June 16, 2017.

Pursuant to the 2015 and 2017 Releases' clear terms, Marco cannot pursue any claims related to events that occurred on or before June 30, 2015 and June 16, 2017, respectively. Martin Smith, the founder, owner, and Chief Executive of Marco, signed the Modifications (which contain the Releases) on Marco's behalf. Tyrell Decl., **Exs. F-G**; Dkt. 64 ¶¶ 51, 70.[7] Because the Amended Complaint does not effectively call into question the authenticity or enforceability of the Releases, this Court should enforce them.

Under Pennsylvania law, "[i]n the absence of fraud or mutual mistake a general release is enforceable according to its terms." *Roth v. Old Guard Ins. Co.*, 850 A.2d 651, 653 (Pa. Super. 2004) (citations omitted). "With respect to general releases our Supreme Court held that however improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of the case." *Id.* As with other contracts, the "general rule ... is that the intention of the parties must govern, but this intention must be gathered from the language of the release," such that "the effect of a release is to be determined by the ordinary meaning of its language." *PFPC Worldwide Inc. v. Lemay*, 2005 WL 2176828, *3 (W.D. Pa. Sept. 6, 2005) (citations omitted).

Here, the terms of the Releases are clear and unambiguous – Marco released "***any claim or cause of action*** at common law, in equity, statutory, or otherwise, in contract or in tort, for fraud, malfeasance, misrepresentation, financial loss, usury, deceptive trade practice, or ***any*** other loss, damage or liability of ***any kind***," and "confirm[ed]" that, as of the date of the Releases, it "ha[d] no claim, set-off, counterclaim, defense, or other cause of action against the

---

[7] Although not necessary to decide this Motion, Marco has admitted that the 2015 Modification was signed by Martin Smith. **Ex. 1** (Response to Requests for Admission Nos. 1 and 2).

Bank."[8]  *See* Tyrell Decl., **Exs. F-G**, § 2.2 (emphasis added).  This plain language bars all of Marco's claims arising out of events on or before June 30, 2015 and June 16, 2017, respectively. *See* Dkt. 64 ¶¶ 94-154 (asserting claims which purportedly arise out of common law (Count I), statute (Counts II, III, IV, and VI), tort (Count V), and contract (Count VII)); *see also PFPC Worldwide Inc.*, 2005 WL 2176828, at *4 (dismissing claims due to general release).

Despite a year of litigation and significant discovery, the Amended Complaint lacks any plausible factual allegations supporting an inference that the Releases should not be enforced.[9] Although Marco offers conclusory assertions and innuendo, based primarily "upon information and belief," suggesting that this Court should not enforce the Modifications, *see, e.g.,* Dkt. 64 ¶¶ 56-60; 72-78, the Court should disregard such unsupported allegations.  *See, e.g., McClure v. Comm'r Jeffrey T. Haste*, 2016 WL 695111, *1 n. 4 (M.D. Pa. Feb. 19, 2016) (averments "upon information and belief" are insufficient under the *Twombly/Iqbal* pleading standard unless, inter alia, the "belief is based on factual information that makes the inference of culpability plausible"); *Diaz v. Rucker*, 2016 WL 8735711, *5 n.9 (E.D. Pa. July 29, 2016) (allegations upon information and belief cannot be boilerplate and conclusory, and a plaintiff must "accompan[y its] legal theory with allegations that make [its] theoretically viable claim plausible"); *Minielly v. Acme Cryogenics, Inc.*, 2016 WL 1221640, *7 (E.D. Pa. Mar. 28, 2016) ("where information and belief averments are merely a formulaic recitation of the elements of a

---

[8] It is well settled in Pennsylvania that, with respect to interpretation of the word "any," it is "generally used in the sense of 'all' or 'every' and its meaning is most comprehensive."  *In re Estate of Belefski*, 413 Pa. 365, 375 (Pa. 1964).

[9] Beyond the fact that there has been substantial discovery, including Citizens' production of more than 11,000 pages of documents, any facts necessary for Marco to plead that the Releases are unenforceable are plainly within its control.  Discovery merely confirms what is clear from the Amended Complaint:  Plaintiffs cannot plead any facts to plausibly avoid the Releases, and further discovery on the issue (including attendant discovery disputes) is unwarranted and would be a waste of the Court's and the parties' resources.

cause of action . . . [r]eliance by [Plaintiff] on information and belief cannot transform legal conclusions into plausible factual allegations").

As explained above, Marco's complaints relating to Citizens' alleged failure to communicate directly with Martin Smith (*e.g.,* Dkt. 64 ¶¶ 56-57, 73, 75) are contrary to undisputed documents governing authorizations on the Accounts. *Supra* pp. 2-4, 6-7. Indeed, communications referenced by Marco confirm that Citizens appropriately communicated with Marco's authorized representatives, Darrin Patterson and Sue O'Neill – who **contacted Citizens** in 2013 (**Ex. 2 hereto**) – in order to *resolve* questionable transactions and *prevent* any future issues. Dkt. 64 ¶¶ 30-32, 40-42; Ex. 9.

It is implausible that Citizens should have expected that O'Neill was committing fraud when she contacted Citizens in order to resolve questionable transactions. Of course, thereafter, Smith added her to the signature cards and the Resolution in September 2014, making Marco's unsupported theory that Citizens should have suspected O'Neill of theft even less plausible. *Fowler*, 578 F.3d at 210-211 (a complaint must "show" "an entitlement [to relief] with facts," and cannot rest upon unsupported allegations and conclusions, and while a court may draw *reasonable* inferences from *well-pled* facts, it should not transform a "speculative pleading" into a legally plausible one); *Iqbal*, 556 U.S at 678. And Marco only highlights the weakness of its contrived speculation when it claims that, for example, a bank with millions of customers (and that, according to Marco, had a number of other issues to address) was concerned enough about purported past impropriety with the Marco Accounts that it orchestrated the signing of the

Modifications specifically to take advantage of Marco's inattention not once, but twice. *See* Dkt. 64 ¶¶ 47, 57 61, 73, 78.[10]

Further, Marco makes allegations based upon information and belief when the facts underlying those allegations are plainly within Marco's knowledge, such as whether Martin Smith signed the 2015 Modification in the presence of Citizens' representative, James Nealon, and whether Smith had an opportunity with respect to the 2015 and 2017 Modifications to negotiate or consult an attorney. *Id.* ¶¶ 51, 54, 76. Indeed, the communications referenced in the Amended Complaint reflect that James Nealon met with Martin Smith to execute the 2015 Modification, and the 2015 and 2017 Modifications both state that Marco had "an opportunity to consult with legal counsel." Dkt. 64 ¶¶ 50-52; Tyrell Decl,, **Exs. F-G**,§ 2.16; *compare with* Dkt. 64 ¶¶ 54, 76, respectively. Likewise, Marco's allegations relating to its late submission of financials or issues with Marco's balance sheet (Dkt 64 ¶¶ 48-49, 62-64) do not provide plausible support for the notion that Citizens engaged in wrongdoing relating to the Accounts; beyond being a *non sequitur*, Marco's submission of financial reporting was intended to protect Citizens (not to protect Marco from its Controller). Accordingly, the Court should disregard these allegations. *See, e.g., Fowler*, 578 F.3d at 210-211; *McClure*, 2016 WL 695111, *1 n. 4; *Diaz*, 2016 WL 8735711, *5 n.9; *Minielly v. Acme Cryogenics, Inc.*, 2016 WL 1221640, *7.

Marco also conclusorily alleges that Citizens obtained the Modifications as a result of fraud. Dkt 64 ¶¶ 58, 74. To the extent Marco is attempting to assert a claim or defense of fraudulent inducement, it fails as a matter of law. As an initial matter, Marco does not assert any

---

[10] Similarly, Marco's allegations related to "standard" bank practice (*id.* ¶¶ 59-60, 72, 77) are wholly speculative and refuted by information in Marco's possession. *See* **Ex. 3 hereto** (Citizens' Responses to Marco's Second Set of Interrogatories, Responses to Interrogatory Nos. 8-9 at p. 8 (stating that the Modifications were based on "a standard template agreement")).

fraud claims against Citizens (*id.* ¶¶ 94-154); rather, Marco's claims sound in negligence. Further, under Pennsylvania law, a party claiming fraudulent inducement must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010).

In other words, "a claim for fraudulent inducement entails the same elements as a claim for common law fraud but also requires an allegation that the misrepresentation at issue was made with specific intent to induce another to enter into a contract when the person had no duty to enter into the contract." *Leder v. Shinfeld*, 609 F. Supp. 2d 386, 403 (E.D. Pa. 2009) (citing *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1187 (Pa. Super. 2005)); *Permenter v. Crown Cork & Seal Co., Inc.*, 38 F. Supp. 2d 372, 381-82 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000). Claims for fraudulent inducement are subject to Rule 9(b)'s particularity requirement, and the claimant's alleged reliance must be reasonable. *Id.* Accordingly, where a party "had the knowledge and the opportunity to conduct independent due diligence before undertaking the transaction in question" but failed to do so, a fraudulent inducement claim cannot survive. *Id.*

Marco plainly cannot satisfy this standard. It fails to assert any affirmative, material misrepresentation by Citizens upon which it reasonably relied. And Marco admitted in the Modifications that it had "an opportunity to consult with legal counsel." Tyrell Declaration, **Exs. F-G**, § 2.16.

In sum, Marco has failed to allege any facts that render the Releases invalid. Indeed, it would be difficult to do so given that the Modifications make clear that "[Marco] has requested and [Citizens] has agreed to amend certain covenants applicable to" Marco's loan, and that the Modifications (including the Releases) were the result of "mutual agree[ment]" made "for good and valuable consideration." Tyrell Decl., **Exs**. **F-G**, p. 1. As such, the Releases are enforceable and any claims that arose on or before June 16, 2017 should be dismissed.

## V. CONCLUSION

Marco authorized Sue O'Neill to transact in the Accounts by no later than September 9, 2014 and until February 11, 2019. Marco also ratified all transactions made prior to September 9, 2014. As such, any claims based on transactions effected by Sue O'Neill prior to February 11, 2019 or any transactions made prior to September 9, 2014 should be dismissed.[11]

Additionally, the Court should enforce the 2015 and 2017 Releases and dismiss any claims that arose on or before June 16, 2017.

Dated: March 25, 2021

Respectfully submitted,

   */s/ Justin J. Kontul*
Perry A. Napolitano
PA I.D. No. 56789
Justin J. Kontul
PA I.D. No. 206026
Reed Smith LLP

---

[11] Once the claims related to O'Neill's fraud are dismissed, the Court should dismiss this case due to a lack of subject matter jurisdiction because the Amended Complaint does not allege facts specific to any other alleged fraudulent activity that could satisfy the monetary threshold for the alleged diversity jurisdiction. Although Marco alleges that a third-party, Jacqueline Jones, stole approximately $378,000 by "fraudulently using the routing and bank account numbers for Marco's operating account" (Dkt. 64 at ¶ 82), the Amended Complaint attaches only one alleged fraudulent check in the amount of $56.90 and does not allege any facts, independent of those relating to O'Neill's fraud, supporting claims against Citizens relating to Jones' alleged fraud.

225 Fifth Avenue, Suite 1200
Pittsburgh, Pennsylvania 15222

*Counsel for Citizens Financial Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of Motion to Dismiss was filed electronically on this 25th day of March 2021. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF System.

                                                                                                                               */s/ Justin J. Kontul*
                                                                                                                    *Counsel for Citizens Financial Group, Inc.*