**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCO CONTRACTORS, INC. | ) | |
| | ) | Civil Action No. 2:20-cv-0237 |
| Plaintiff, | ) | |
| | ) | Judge J. Nicholas Ranjan |
| vs. | ) | |
| | ) | |
| CITIZENS FINANCIAL GROUP, INC., | ) | |
| d/b/a CITIZENS BANK, | ) | |
| | ) | |
| Defendant. | ) | |


<u>**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD............................................................................................3

III.    ARGUMENT ........................................................................................................4

        A.      The Alleged Existence Of Signature Cards And A Resolution
                Do Not Bar Marco's Claims .....................................................................4

        B.      Marco Did Not Release All Claims That Arose On Or
                Before June 16, 2017 ............................................................................12

IV.     CONCLUSION....................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALA, Inc. v. CCAR, Inc.*,
29 F.3d 855 (3d Cir. 1994)..................................................................................5

*Alston v. Parker*,
363 F.3d 229 (3d Cir. 2004)...............................................................................25

*Arista Records, LLC. v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)........................................................................ 20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................3, 4, 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................3, 4, 21

*Bickings v. Bethlehem Lukens Plate*,
82 F. Supp. 2d 402 (E.D. Pa. 2000) ............................................................ 13, 14

*Cady v. Mitchell*,
220 A.2d 373 (Pa. Super. 1966).....................................................................14, 16

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016)..............................................................................21

*Davis v. CMH Mfg., Inc.*,
2014 U.S. Dist. LEXIS 143180 (M.D. Pa. 2014) ........................................................5

*Diaz v. Rucker*,
2016 WL 8735711 (E.D. Pa. 2016) ...................................................................21

*Evans v. Marks*,
218 A.2d 802 (Pa. 1966) ..................................................................................13

*Flatley v. Penman*,
429 Pa. Super. 517 (Pa. Super. 1993) ...............................................................13

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)............................................................................. 21

*Graff v. Subbiah Cardiology Assocs., Ltd.*,
2008 WL 2312671 (W.D. Pa. 2008) ..................................................................21

*Gross v. German Found. Indus. Initiative*,
549 F.3d 605 (3d Cir. 2008)..............................................................................3

*Harrity v. Medical College of Pennsylvania Hosp.*,
439 Pa. Super. 10 (Pa. Super. 1994) ...............................................................13

*In re Burlington Coat Factory Sec. Litg.*,
114 F.3d 1410 (3d Cir. 1997)............................................................................5

*International Organization Master, Mates and Pilots of America Local No. 2 v. International Organization Masters, Mates and Pilots of America Inc.*,
497 Pa. 102 (Pa. 1981) ...................................................................................13

*Jordan v. SmithKline Beecham, Inc.,*
958 F. Supp. 1012 (E.D. Pa. 1997) .................................................................14

*Kolar v. Preferred Real Estate Investments, Inc.*,
361 F. App'x 357 (3d Cir. 2010) .......................................................................3

*McClure v. Comm'r Jeffrey T. Haste*,
2016 WL 695111 (M.D. Pa. 2016) .............................................................. 20, 21

*McDermott v. Clondalkin Group, Inc.*,
649 F. App'x 263 (3d Cir. 2016) ................................................................21, 24

*McTernan v. City of York*,
564 F.3d 636 (3d Cir. 2009)..............................................................................4

*Mell v. GNC Corp.*,
2010 WL 4668966 (W.D. Pa. 2010) ..................................................................4

*Mesta v. RBS Citizens N.A.*,
2014 U.S. Dist. LEXIS 174515 (W.D. Pa. 2014) ...............................................5

*Muho v. Citibank N.A.*,
2015 WL 106677 (N.D. Cal. 2015) ....................................................................6

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*,
515 F.2d 1200 (5th Cir. 1975) .......................................................................5, 6

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993)............................................................................6

*Phillips v. Cty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008)............................................................................25

iii

*Reg'l Produce Coop. Corp. v. TD Bank, N.A.*,
2020 U.S. Dist. LEXIS 50463 (E.D. Pa. 2020) ...........................................................5

*Restifo v. McDonald*,
230 A.2d 199 (1967) .......................................................................................................14

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) ............................................................................................5

*Thompson v. Real Estate Mortg. Network*,
748 F.3d 142 (3d Cir. 2014) ..........................................................................................21

*Three Rivers Motors Co. v. Ford Motor Co.*,
522 F.2d 885 (3d Cir. 1975) ..........................................................................................13

*Vaughn v. Didizian*,
436 Pa. Super. 436 (Pa. Super. 1994) ......................................................................13, 14

*Vorchheimer v. Philadelphian Owners Ass'n*,
903 F.3d 100 (3d Cir. 2018) ............................................................................................6

*Zinchini v. Jaguar Land Rover N. Am., LLC*,
2013 WL 12133933 (W.D. Pa. 2013) .................................................................14, 15, 16

*Zinchini v. Jaguar Land Rover N. Am., LLC*,
2013 WL 12133934 (W.D. Pa. 2013) .............................................................................14

# I.    INTRODUCTION

Plaintiff, Marco Contractors, Inc. ("Plaintiff" or "Marco"), filed its Amended Complaint,

in an effort to bridge the gap regarding a discovery conflict with Defendant, Citizens Financial

Group, Inc. ("Defendant" or "Citizens"), which brought discovery to a screeching halt. On more

than one occasion within its Brief in Support, Citizens states that it produced more than 11,000

pages of documents in discovery[1] (*see* Dkt. 66 at pp. 1, 10 n.9), seemingly in an attempt to

demonstrate to the Court that it has gone above and beyond in responding to Marco's discovery

requests. However, in actuality, Citizens refused to provide responsive answers and documents to

the vast majority of Marco's discovery requests, instead asserting baseless, perfunctory objections

to nearly all of Marco's discovery requests. Citizens' most frequent objection to Marco's discovery

requests referenced the 2015 Note Modification[2]—a document not mentioned or considered in

Marco's original Complaint, but rather produced by Citizens only after its first Motion to Dismiss

was denied—and argued that its existence extinguished Marco's ability to assert claims "based on

facts known or unknown that exist" as of the date of its execution as justification for refusing to

produce the information and documents requested by Marco. Marco amended its Complaint to

address the 2015 and 2017 Note Modifications and resolve the corresponding discovery dispute.

Like its first Motion to Dismiss, Citizens' instant Motion to Dismiss attempts to deflect

any responsibility for its actions and instead seeks to direct all attention toward Sue O'Neill and

---

[1] The only responsive documents provided by Citizens in formal discovery were bank statements, emails/letters between Citizens' representatives and Marco's representatives, communication logs/charts, and occasionally the documents attached to the aforementioned emails/letters. Among the many documents Citizens outright refused to provide, are Citizens' policies and procedures relative to embezzlement, fraud, and suspicious activity, which strike directly at the heart of Marco's case—namely Citizens' grossly negligent action and inaction relative to Marco's accounts and its apparent failure to safeguard Marco's accounts from fraud and embezzlement.

[2] The 2017 Note Modification was not discovered by Citizens until after Citizens served its objections and responses to Marco's first set of discovery requests.

her well established embezzlement activities. What Citizens desperately attempts to ignore is its own culpability in O'Neill's embezzlement scheme and other recurrent fraudulent activity within Marco's accounts. There is no denying that O'Neill's actions were egregious and criminal. However, that does not mean that Citizens is off the hook for turning a blind eye to her actions and enabling her to continue her embezzlement scheme unchecked for over a decade.

Marco seeks to hold Citizens accountable for its grossly negligent, wanton, willful, and reckless action and inaction with regard to safeguarding Marco's accounts, which enabled not only O'Neill's embezzlement scheme, but also Jacquelyn Jones' recurrent fraudulent activity within Marco's accounts. Citizens was aware of fraudulent activities and failed to report them. Citizens failed to enact or even discuss the industry standard safeguards available to prevent additional fraud against Marco. Citizens was aware of specific issues with O'Neill—including her inability to timely provide required financials or a balanced Balance Sheet. However, instead of notifying Martin Smith or any other duly authorized Marco representative regarding O'Neill's suspicious financials, Citizens reduced financial reporting requirements, further enabling O'Neill to continue her embezzlement scheme. Citizens was aware of O'Neill's recurrent inability to maintain sufficient funds in Marco's accounts to avoid overdrafts. Instead of notifying Martin Smith or any other duly authorized Marco representative, Citizens unilaterally decided to transfer Marco's funds without its permission. Furthermore, even after becoming fully aware of the internal and external fraud suffered by Marco, Citizens continued to allow fraudulent checks to be presented and cashed and debits to be fraudulently withdrawn against Marco's accounts until June/July 2019.

Interestingly, Citizens argues that "Marco must assert plausible, non-speculative claims, which it plainly cannot do" (*see id.* at p. 1), despite the fact that Marco (1) has already pled plausible, non-speculative claims, which have survived a prior Motion to Dismiss and (2) has now

filed an Amended Complaint which includes nearly fifty paragraphs of additional factual support for its plausible, non-speculative claims.

In response to the allegations within Marco's Amended Complaint, Citizens points to (1) inapplicable alleged agreements to argue that it essentially had no duties to Marco with regard to fraudulent and suspicious activity, of which it was well aware, and (2) release language within unenforceable note modifications to unsuccessfully argue that Marco previously released any and all claims Marco had against Citizens. As set forth more fully below, Citizens' Motion to Dismiss Marco's Amended Complaint should be denied in its entirety as (1) the alleged existence of signature cards and a resolution do not bar Marco's claims and (2) Marco did not release all claims that arose on or before June 16, 2017.[3]

## II.    LEGAL STANDARD

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must "accept the truth of all factual allegations and must draw all reasonable inferences in favor of the non-movant." *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (In separating the factual and legal elements of a claim, in the first part of its two-part analysis, the district court must accept all of the complaint's well-pleaded facts as true). "So long as the complaint sets forth a 'plausible' claim for relief, a defendant's motion to dismiss must fail." *Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 357, 359 n.5 (3d Cir. 2010); *see also Iqbal*, 556 U.S. at 679 (In the second-part of its two-part analysis, a district court must determine whether the alleged facts are sufficient to

---

[3] Marco has not included a factual background section as (1) this Court is well aware of the factual background of this case, having already ruled upon a prior Motion to Dismiss and (2) the facts at hand are set forth at length within Marco's Amended Complaint and are raised in the context of Marco's arguments herein.

show a plausible claim for relief); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, & n.3 (2007). Further, a complaint may not be dismissed even if it "appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. The Supreme Court's . . . pleading standard in *Twombly* does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Mell v. GNC Corp.*, 2010 WL 4668966, at *4 (W.D. Pa. 2010) (citing *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009)).

## III.    ARGUMENT

### A.    The Alleged Existence Of Signature Cards And A Resolution Do Not Bar Marco's Claims

Citizens alleges that signature cards and a General Deposit Resolution for Single Stockholder Corporations ("Resolution"), which were purportedly executed on September 19 2014, bar all of Marco's claims. *See* Dkt. 66 at pp. 6-8. Citizens argues that (1) because the signature cards and Resolution allegedly gave O'Neill authority to transact within Marco's accounts from September 2014 until February 2019, Marco is precluded from challenging any transactions initiated or authorized by O'Neill from September 2014 until February 2019 and (2) because Marco allegedly "ratifie[d] and confirm[ed] any and all transactions with the Bank prior to the date of the Resolution [September 19, 2014]," Marco cannot challenge any transactions made prior to that date. *Id*. at p. 6. Further, Citizens argues that "[t]his Court should consider the signature cards and Resolution because Marco's claims are based on allegedly unauthorized transactions." *Id*. at p. 3. Citizens provided copies of said signature cards and the Resolution and cited several provisions of those documents throughout its brief in support. *See generally id.*; *see also* Dkt. 67, Exhibits A, B, E. By doing so, Citizens is asking the Court to improperly consider information and documents outside the four corners of the Amended Complaint which are not

integral to or explicitly relied upon in the Amended Complaint. *See Reg'l Produce Coop. Corp. v. TD Bank, N.A.*, 2020 U.S. Dist. LEXIS 50463, at *10 (E.D. Pa. 2020) (wherein the Court found that it was precluded from considering a Business Deposit Account Agreement, which Defendant attached to its Motion to Dismiss, which Plaintiff did not rely upon in drafting its Complaint).

"As a general rule, a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) 'may not consider matters extraneous to the pleadings' without converting the motion to one for summary judgment." *Id.* at *9 (quoting *In re Burlington Coat Factory Sec. Litg.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint." *Id.* (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt*, 770 F.3d at 249; *see also Mesta v. RBS Citizens N.A.*, 2014 U.S. Dist. LEXIS 174515, at *10 (W.D. Pa. 2014) (finding that the court may not consider extraneous documents which are not "undisputedly authentic" and "integral to or explicitly relied upon in the complaint" in deciding a Motion to Dismiss); *Davis v. CMH Mfg., Inc.*, 2014 U.S. Dist. LEXIS 143180, at *10 (M.D. Pa. 2014) (court refused to consider documents attached to the motion to dismiss where only defendant's affirmative defense, not plaintiff's claims, were based on those documents).

Notably, the cases cited by Citizens in support of its argument are distinguishable from the case at hand. First, *ALA, Inc. v. CCAR, Inc.*, 29 F.3d 855, 859 & n.8 (3d Cir. 1994) is distinguishable as it is cited in reference to *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206-07 (5th Cir. 1975), a case in which the document considered was a document

included in plaintiff's complaint, not one that was attached to or referenced in a motion to dismiss as is the case here. Similarly, *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111-112 (3d Cir. 2018) is distinguishable as the documents at issue were not only documents considered by plaintiff in drafting her complaint, but also were documents which were attached to plaintiff's complaint, rather than outside the four corners of the complaint as is the case here. Additionally, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993) is distinguishable as plaintiff's complaint was based on and explicitly relied upon the contract attached to defendant's motion to dismiss, unlike here, where the documents referenced by Citizens were neither considered nor relied upon by Marco in its Amended Complaint. Lastly, *Muho v. Citibank N.A.*, 2015 WL 106677, at *4 (N.D. Cal. 2015) is not controlling as it is from the Northern District of California. Further, it is distinguishable as plaintiff's primary cause of action in that case was breach of contract and the document attached to defendant's motions to dismiss was a document which formed the parties' contract and was explicitly relied upon in the plaintiff's complaint, unlike the case at hand, wherein Marco neither considered nor relied upon the documents referenced by Citizens and, as argued by Citizens[4], Marco's primary causes of action sound in negligence.

Here, Citizens is seeking to dismiss Marco's Amended Complaint based on signature cards and a Resolution—documents which are neither integral to nor explicitly relied upon in Plaintiff's Amended Complaint. Citizens argues that Marco's "Amended Complaint contains no allegations that call into question the applicability and enforceability of the signature cards and Resolution." *See* Dkt. 66 at p. 6. However, Marco's claims are not based on the signature cards or the Resolution referenced by Citizens. Rather, Marco's claims are based upon duties and standards of care which

---

[4] *See* Dkt. 66 at p. 13 ("Marco's claims sound in negligence").

exist apart from and outside of the referenced documents. *See generally* Dkt. 64. Marco did not consider or utilize the signature cards or Resolution, extraneously provided by Citizens, in framing its Amended Complaint. *Id.* Accordingly, this Court should disregard these documents at this stage.

Despite Citizens' argument that Marco's claims are based on allegedly unauthorized transactions, the allegations within Marco's Amended Complaint reach far beyond mere unauthorized transactions. As more specifically set forth in Marco's Amended Complaint, Marco alleged that Citizens had duties to Marco under common law and various provisions of the PCC, which it failed to perform, and that Citizens' breaches of duty were the "but for" causes of Marco's damages. *Id.* As set forth in Marco's Amended Complaint, Citizens failed to act in good faith, diligence, reasonableness, and care on numerous occasions. *Id.* Marco has pled that Citizens failed to communicate with a duly authorized representative of Marco regarding Citizens' policies and fraud prevention processes, including positive pay, two person-two token payment verification processes for ACH payments, and dual approval controls for wire transfers and ACH functionality, and failed to properly enact said fraud preventative measures. *See id.* at ¶¶ 2, 21-24, 35-39, 85-87. Marco alleged that Citizens was aware of fraudulent activity within Marco's accounts as early as November 2013; however, Citizens failed to encourage, or even suggest, that the compromised accounts be closed and new account numbers issued. *Id.* at ¶¶ 30-32.

Marco pled that less than two months later, in January 2014, Citizens allowed a check in the amount of $50,662.30, which had not been signed, to clear. *Id.* at ¶ 34. Marco alleged that, again, in early September 2014, Citizens became aware of suspicious and fraudulent activity regarding Marco's accounts and indicated that it would place Marco's accounts on a fraud "watch list." *Id.* at ¶¶ 40-44. However, Citizens took no additional steps to secure the accounts from fraud

then or as an ongoing concern despite being put on notice of the suspicious and fraudulent activity. *Id.* at ¶ 45. Nor did Citizens inform Martin Smith of the 2014 fraud situation. *Id.* at ¶ 42.

Marco has pled that Citizens was aware that O'Neill was chronically late with providing financial reports to Citizens, which were required because of Marco's line of credit; however, Citizens never contacted Martin Smith or any other duly authorized Marco representative regarding O'Neill's late financials. *Id.* at ¶ 28. Marco has pled that on more than one occasion, O'Neill produced financial reports which were significantly out of balance; however, at no time did Citizens notify Martin Smith, or any other duly authorized Marco representative, regarding the suspicious balance sheets. *Id.* at ¶¶ 29, 62-65.

Marco pled that in an attempt to entice Marco to sign the 2015 Note Modification, Citizens' representatives reached out to O'Neill regarding Marco's past due financial reports and indicated that with Marco's line of credit coming up for review/renewal in June, Citizens would like to lessen Marco's financial reporting requirements by issuing a modification of the 2009 Note. *Id.* at ¶¶ 48-49. Again, as an enticement to have Marco sign the 2017 Note Modification, Citizens indicated that it would eliminate Marco's reporting requirements if Marco would sign the 2017 Note Modification. *Id.* at ¶¶ 67, 69. Marco pled that Citizens failed to witness Martin Smith sign the 2017 Note Modification, despite industry standards. *Id.* at ¶¶ 68, 70, 72.

Marco pled that no Citizens' representative ever emailed, copied, or discussed the November 2013 and September 2014 actual fraud incidents with Martin Smith prior to having him sign the 2015 or 2017 Note Modification, which differed significantly from the 2009 Note and included release language. *Id.* at ¶¶ 53, 55-56, 59, 60, 75. Marco pled that Citizens presented the 2015 and 2017 Note Modifications in a 'take it or leave it' fashion and did not afford Marco the opportunity to negotiate terms or discuss with an attorney before execution. *Id.* at ¶¶ 54, 76. Marco

pled that the release language and the other extremely one-sided language within in the 2015 and 2017 Note Modifications were part of a coordinated 'clean-up' effort by Citizens to protect itself from past operational issues and all major past exposures. *Id.* at ¶¶ 61, 78. Marco has sufficiently pled facts and circumstances surrounding the alleged execution of the 2015 and 2017 Note Modifications to demonstrate bad faith on the part of Citizens, wherein Citizens concealed (or at a minimum, failed to inform Martin Smith of) actual fraud which occurred in November 2013 and September 2014 within Marco Accounts, while also simultaneously seeking a release of all potential claims Marco may have against Citizens "based on facts known or unknown that exist as of this date." *Id.* at ¶¶ 27-33, 40-43, 45, 48-49, 51-70, 72-78.

Marco also pled that on several occasions in 2018, when O'Neill was slow in responding or hard to reach regarding overdrafts within Marco's accounts, Citizens' representatives made transfer decisions without the approval of Marco. *Id.* at ¶ 79. Marco pled sufficient facts regarding Citizens fulfilling requests, initiating transfers, and processing checks as directed by O'Neill before she was designated a duly authorized representative Marco. *Id.* at ¶¶ 15-20, 23, 29, 34, 37-39, 81, 83. Marco has sufficiently pled that Citizens processed checks signed by Jacquelyn Jones, a non-related third party, who had no apparent ties to Marco and who was certainly not a duly authorized representative of Marco. *Id.* at ¶¶ 82, 92-93, 99, 107, 123, 143. Marco pled that it informed Citizens of O'Neill's embezzlement and Jones' fraudulent activity in February 2019, putting Citizens on notice to cease payment of fraudulent checks and electronic transfers. *Id.* at ¶¶ 2, 88, 123-124. However, Citizens allowed fraudulent checks to be presented and cashed and fraudulent debits to be withdrawn against Marco's accounts until June/July 2019. *Id.* at ¶¶ 2, 88, 125. Thus, Marco's allegations extend far beyond alleged unauthorized transactions, and Citizens'

argument that Marco's Amended Complaint should be dismissed due to the existence of signature cards and a Resolution, should be denied.

Citizens also argues that Marco's claims should be dismissed because customers are better able than banks to minimize the risk of embezzlement. *See* Dkt. 66 at p. 8. That is not necessarily the case, and regardless, even if true, would not preclude any and all liability on the part of Citizens for its negligent action and inaction toward Marco. Such an argument in and of itself fails to warrant dismissal of any, let alone all, of Marco's claims.

Moreover, Citizens previously made these arguments in its first Motion to Dismiss, which was denied by this Court on September 1, 2020. In its first Motion to Dismiss, Citizens insisted that this Court consider a number of alleged agreements between Marco and Citizens as controlling and preclusive of all of Marco's claims. *See* Dkt. 31 at pp. 1-4, 8-9. Included within those alleged agreements were the signature cards and the Resolution. *See id.* at pp. 1-4, 8-9; *see also* Dkt. 30, Exhibits B and E. Here, Citizens has again submitted a declaration attaching the signature cards and Resolution (*see* Dkt. 67, Exhibit A, B, E) and argues that these documents should be considered preclusive of Marco's claims. *See* Dkt. 66 at pp. 3, 6-8. In its Order dismissing Citizens' first Motion to Dismiss, this Court addressed this issue and held, *inter alia*, that:

> Defendant asserts that the claims are barred, in large part, due to the terms of various agreements between the parties. Along with its motion, Defendant submits a [30] declaration of its senior vice-president and five agreements that Defendant asserts govern the parties' relationship. After a careful consideration of the parties' comprehensive and well-written submissions, the Court denies the motion. The Court finds that Plaintiff has pled sufficient facts at this stage to state plausible claims. *See, e.g.,* Compl. at 2, 20-27, 33, 35-37, 39-42, 47, 77-79. Further, the Court finds that many of Defendant's arguments center on the application of the agreements that Defendant submits with its declaration. Four of the five agreements were not referenced in the complaint, and it is unclear whether and to what extent the agreements apply.

*See* Dkt. 41. Therefore, it is respectfully requested that this Court again disregard the signature cards and Resolution.

Even if this Court considered the signature cards and Resolution, which it should not for the reasons set forth above, these documents do not preclude Citizens from all liability in the case at hand. What Citizens once again fails to recognize is that the Resolution and the signature cards, which allegedly designate O'Neill as a duly authorized person to act on Marco's behalf, with regard to only the accounts ending in x8405 and x8251, were executed on September 19, 2014. *See* Dkt. 67, Exhibits A-E. Citizens fails to point to or provide any document, prior to the documents dated September 19, 2014, which designated O'Neill as a duly authorized person with authority to act on Marco's behalf. As set forth in Marco's Amended Complaint, Citizens communicated exclusively with O'Neill (to the exclusion of those actually duly authorized to act on Marco's behalf) on a number of Marco matters prior to September 19, 2014, including fraudulent activity discovered by Citizens in November 2013 and early September 2014. *See* Dkt. 64 at ¶¶ 15-24, 29, 31-33, 35-43. Further, Citizens fulfilled requests, initiated transfers, and processed checks as directed by O'Neill long before she was designated as duly authorized to act on Marco's behalf. *Id.* at ¶¶ 15-20, 23, 29, 34, 37-39, 81, 83. At a minimum, O'Neill's fraud began in 2009, five years before execution of the signature cards and Resolution. *Id.* at ¶ 81.

Furthermore, there is a material dispute of fact as to the applicability of the September 2014 signature cards. In a supplement to its Initial Disclosures, Marco produced (1) a March 18, 2016 email from Francine Malachin to Sue O'Neill requesting that O'Neill have Martin Smith sign and return the executed signature card to Citizens and (2) two executed Business Signature Cards, dated March 18, 2016, naming only Martin Smith as an authorized signer. *See* MARCO 0000065-

0000067, attached hereto as Exhibit A.[5] It is unclear to which account(s), these 2016 business signature cards apply. Thus, at a minimum, there is a genuine issue of material fact as to the applicability of the September 2014 signatures cards; therefore, Citizens' argument as to the enforceability and applicability of the 2014 signature cards and Resolution should be denied. *See* Fed. R. Civ. P. 56(a) (Summary judgment is appropriate only where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

### B. Marco Did Not Release All Claims That Arose On Or Before June 16, 2017

Citizens argues that certain release language within the 2015 and 2017 Note Modifications bars any and all claims asserted by Marco which occurred on or before June 16, 2017, and further alleges that the "Amended Complaint does not effectively call into question the authenticity or enforceability of the Releases." *See* Dkt. 66 at p. 9. To the contrary, and as discussed in greater detail below, Marco's Amended Complaint sufficiently alleges that both the 2015 and 2017 Note Modifications are unenforceable against Marco. *See* Dkt. 64 at ¶¶ 27-33, 40-43, 45, 48-49, 51-70, 72-78.

Citizens argues that (1) in the absence of fraud or mutual mistake a general release is enforceable according to its terms and (2) the terms of the release language within the 2015 and 2017 Note Modifications are clear and unambiguous, and, as such, the plain language bars all of Marco's claims arising out of events on or before June 16, 2017. *See* Dkt. 66 at pp. 9-10. However, Citizens entirely disregards the circumstances surrounding the alleged execution of the 2015 and 2017 Note Modifications which, as sufficiently alleged by Marco in its Amended Complaint,

---

[5] Citizens' Motion to Dismiss discusses extraneous signature cards and a Resolution which were not considered by Marco in drafting its Amended Complaint. In response thereto, Marco references initial disclosure documents provided by Marco to Citizens.

demonstrate that the 2015 and 2017 Note Modifications are unenforceable as any alleged signature of Martin Smith was obtained by Citizens in bad faith. *See* Dkt. 64 at ¶¶ 27-33, 40-43, 45, 48-49, 51-70, 72-78.

"Under Pennsylvania law, general releases are interpreted by the rules of contract construction." *Bickings v. Bethlehem Lukens Plate*, 82 F. Supp. 2d 402, 405 (E.D. Pa. 2000) (citing *Evans v. Marks*, 218 A.2d 802 (Pa. 1966); *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975)). "In construing a release, the foremost consideration is the intention of the parties." *Id.* (citing *Three Rivers Motors*, 522 F.2d at 892). "The intention of the parties is gathered from (1) the language of the release and (2) the circumstances surrounding the execution of the release." *Id.*

"First, a court must look to the language of the release. In examining the language of a release, the terms of the release will be given their ordinary meaning unless a different meaning was clearly intended." *Id.* "In addition, the language of the release must be viewed in the context of the entire document." *Id.* (citing *Harrity v. Medical College of Pennsylvania Hosp.*, 439 Pa. Super. 10, 21 (Pa. Super. 1994)). Each part of the release must be given effect. *Id.* (citing *Harrity*, 439 Pa. Super. at 21). "Therefore, terms in one section of the contract should not be interpreted to nullify or conflict with other terms." *Id.* (citing *Flatley v. Penman*, 429 Pa. Super. 517, 521 (Pa. Super. 1993)). "If one clause appears to conflict with another, the clauses should be construed, if possible, as consistent with one another." *Id.* at 406 (citing *Flatley*, 429 Pa. Super. at 521).

"Next, in determining the intent of the parties, a court must inquire into the circumstances surrounding the execution of the release." *Id.* (citing *International Organization Master, Mates and Pilots of America Local No. 2 v. International Organization Masters, Mates and Pilots of America Inc.*, 497 Pa. 102, 112-3 (Pa. 1981)). "The surrounding circumstances clarify the intention

of the parties and identify 'matters which may be fairly said to have been within the contemplation of the parties when the release was given.'" *Id.* (quoting *Vaughn v. Didizian*, 436 Pa. Super. 436, 439 (Pa. Super. 1994)). "Only those matters within the contemplation of the parties will be covered by the release." *Id.* (citing *Jordan v. SmithKline Beecham, Inc.*, 958 F. Supp. 1012, 1019 (E.D. Pa. 1997)).

"Generally, a release will not bar a claim that accrued after the execution of the release." *Id.* (citing *Jordan*, 958 F. Supp. at 1019; *Restifo v. McDonald*, 230 A.2d 199, 202 (1967)). "The circumstances, including the details as to when, where and how the releases were secured, and the inadequacy of the consideration, are all matters reflecting on the meeting of the minds of the parties." *Cady v. Mitchell*, 220 A.2d 373, 375 (Pa. Super. 1966). "Pennsylvania law does not recognize a release executed prior to the occurrence of the events giving rise to a cause of action that was not in the contemplation of the parties at the time the release was signed." *Zinchini v. Jaguar Land Rover N. Am., LLC*, 2013 WL 12133933, at *4 (W.D. Pa. 2013), *report and recommendation adopted*, 2013 WL 12133934 (W.D. Pa. 2013) (citing *Restifo*, 230 A.2d at 199). "A long line of Pennsylvania cases has held that a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given. Accordingly, the general words of the release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of the release." *Id.* at *3 (quoting *Restifo*, 230 A.2d at 201.) "[A]ccrual of a claim is governed by the discovery rule, [and] under the discovery rule, a claim accrues upon awareness of actual injury." *Bickings*, 82 F. Supp. 2d at 409. "The awareness of an injury for accrual purposes occurs when a plaintiff knew or should have known of the injury and that the injury had been caused by another party's conduct." *Id.*

The claims alleged by Marco did not accrue until early 2019 when Marco discovered O'Neill's embezzlement and the fraud perpetrated by Jacquelyn Jones. *See* Dkt. 64 at ¶¶ 81-82. Thus, at the time of Martin Smith's alleged execution of the 2015 and 2017 Note Modifications, he had no way of contemplating or foreseeing that claims relative to embezzlement and recurring fraud discovered years later within Marco's bank accounts would or could be barred by release language contained in note modifications for a line of credit.

In *Zinchini*, the court considered release language very similar to the release language in the case at hand, which read in part:

> I do hereby remise, release, acquit, satisfy, and forever discharge and give up any and all claims and rights which I may have against You. This releases all claims, *including those of which I am not aware and those not mentioned in the Release*. I specifically release You from any and all claims, demands, damages, sums of money, actions[,] rights, causes of action[,] loss of use, loss of services, expenses, compensation, consequential damages, obligations, and liabilities of any kind or nature, whatsoever, *known or unknown*, matured or unmatured, which I may have had or claim to have had, or now have or claim to have or hereafter may claim or assert, which arise out of or are in any manner whatsoever directly or indirectly, connected to or related to the manufacture, sale, use, possession, ownership and/or lease, operation and repairs of a certain JLR vehicle described more particularly as a 2008 Land Rover LR2 SE SALFS24N58H019672, referred to as "Vehicle" acquired by me on or about the 3rd day of November in the year of 2007.

2013 WL 12133933 at *1 (emphasis added). In *Zinchini* the plaintiff signed the general release after asserting a lemon law action against a car manufacturer. *Id.* A year later plaintiff was involved in a car accident with the same vehicle that was subject to the lemon law action and sustained significant injuries after an air bag failed to deploy. *Id.* Plaintiff filed suit against the car manufacturer seeking damages due to the injuries she sustained in the accident. *Id.* The Court determined that given the conditions and circumstances surrounding execution of the release, plaintiff's claim was not barred by the release because that claim had not accrued at the time that the release was signed and "it would have been unfair for a release to bar claims that could not

possibly have been contemplated or foreseen by the parties." *Id.* at *6-7. *See also Cady*, 220 A.2d at 373-375 (wherein the Pennsylvania Superior Court voided a general release executed after an automobile accident which covered "all unknown, unforeseen, unanticipated and unsuspected injuries," relative to injuries that existed at the time of signing the release but were not discovered until after the release was signed).

Marco's Amended Complaint pled sufficient facts and circumstances surrounding the alleged execution of the 2015 and 2017 Note Modifications to demonstrate that said note modifications are unenforceable, as Citizen acted in bad faith by inducing Martin Smith to sign the note modifications by concealing (or at a minimum, by failing to inform Martin Smith of) actual fraud which occurred in November 2013 and September 2014 within Marco Accounts, while also simultaneously seeking a release of all potential claims Marco may have against Citizens "based on facts known or unknown that exist as of this date." *See* Dkt. 64 at ¶¶ 27-33, 40-43, 45, 48-49, 51-70, 72-78.

First, Marco pled that in 2009 Martin Smith entered into a Revolving Demand Note and Security Agreement ("2009 Note") with Citizens for a $500,000.00 line of credit. *Id.* at ¶ 27. Next, Marco pled that in November-December 2013, Citizens was made aware of a number of fraudulent checks that were clearing Marco's accounts. *Id.* at ¶¶ 30-31. Citizens failed to suggest or encourage Marco to close the accounts compromised by fraud and have new account numbers issued. *Id.* at ¶ 32. Further, Citizens failed to inform Martin Smith of the fraud. *Id.* at ¶ 33. In early September 2014, Citizens became aware of a number of fraudulent duplicate checks clearing Marco's accounts; however, Citizens' representatives, failed to contact Martin Smith, the owner, customer and duly authorized representative of Marco, to inform him of the situation or request his assistance in dealing with the suspicious and fraudulent activity. *Id.* at ¶¶ 40-42. Instead, Citizens

communicated only with O'Neill regarding the fraudulent checks. *Id.* at ¶ 43. Citizens took no additional steps to secure the account from fraud at that time or as an ongoing concern, despite being put on notice of suspicious and fraudulent activity regarding Marco's accounts. *Id.* at ¶ 45.

Marco pled that O'Neill was chronically late in providing financial reports to Citizens which were required because of Marco's line of credit with Citizens. *Id.* at ¶ 28. However, at no time did Citizens' representatives reach out to Martin Smith or any other duly authorized representative regarding Marco's chronically late financials. *Id.* at ¶ 28. Also, on more than one occasion, O'Neill produced financial reports which were significantly out of balance. *Id.* at ¶¶ 29, 62, 63. Upon information and belief, it is essentially unheard of for a bank to extend $500,000.00 credit to a company where its Balance Sheet does not balance. *Id.* at ¶ 64. However, at no time did Citizens notify Martin Smith, or any other duly authorized representative of Marco, regarding the multiple occasions when Marco's Balance Sheets were significantly out of balance. *Id.* at ¶ 65. Instead, Citizens communicated exclusively with O'Neill regarding the suspicious balance sheets. *Id.* at ¶ 65.

Marco pled that, in an attempt to entice Marco to sign a modified note agreement, beginning in May 2015, Citizens' representatives reached out to O'Neill regarding Marco's past due financial reports and indicated that with Marco's line of credit coming up for review/renewal in June, Citizens would like to lessen Marco's financial reporting requirements by issuing a note modification. *Id.* at ¶¶ 48-49. According to a Citizens' communication log, on July 10, 2015 James Nealon had a face-to-face meeting with Martin Smith wherein Martin Smith allegedly executed the 2015 Note Modification. *Id.* at ¶¶ 51, 52. No Citizens' representative ever emailed, copied, or discussed the November 2013 and September 2014 actual fraud incidents with Martin Smith prior

to having him sign the 2015 Note Modification, which differed significantly from the 2009 Note and included the following release language:

> 2.2 Release of the Bank. The Borrower hereby confirms that as of the date hereof it has no claim, set-off, counterclaim, defense, or other cause of action against the Bank including, but not limited to, a defense of usury, any claim or cause of action at common law, in equity, statutory, or otherwise, in contract or in tort, for fraud, malfeasance, misrepresentation, financial loss, usury, deceptive trade practice, or any other loss, damage or liability of any kind, including, without limitation, any claim to exemplary or punitive damages arising out of any transaction between the Borrower and the Bank. To the extent that any such setoff, counterclaim, defense, or other cause of action may exist or might hereafter arise based on facts known or unknown that exist as of this date, such set-off, counterclaim, defense and other cause of action is hereby expressly and knowingly waived and released by the Borrower. The Borrower acknowledges that this release is part of the consideration to the Bank for the financial and other accommodations granted by the Bank in this Agreement.

*Id.* at ¶ 53. Upon information and belief, Citizens presented the 2015 Note Modification in a 'take it or leave it' fashion and did not afford Marco the opportunity to negotiate terms or discuss with an attorney before execution. *Id.* at ¶ 54. A July 10, 2015 Citizens' communication log entry made by James Nealon makes no mention of the 2015 Note Modification or any discussion of the fraud incidents that occurred in November 2013 and September 2014, and, according to a Citizens' communication log entitled "All Activity History," there is no indication that any Citizens' representatives discussed the fraud which occurred on Marco's accounts in November 2013 and September 2014. *Id.* at ¶¶ 55-56.

Upon information and belief, in this situation, banks would typically issue a whole new note, not amend a prior note with a modification agreement. *Id.* at ¶ 59. Upon information and belief, the "facts known or unknown" release language added in Section 2.2 of the 2015 Note Modification is very uncommon in standard bank note forms, except in known 'troubled' situations. *Id.* at ¶ 60. Upon information and belief, the release language and the other extremely one-sided language within in the 2015 Note Modification were part of a coordinated 'clean-up'

effort by Citizens to protect itself from past operational issues and all major past exposures. *Id.* at ¶ 61.

The 2009 Note was modified again in 2017. *Id.* at ¶ 66. On February 28, 2017, Kolby Baker of Citizens emailed O'Neill attaching a "modification to the loan documents for Marty's review" in which Citizens agreed to eliminate "the requirements for quarterly A/R, A/P and Borrowing Base reporting. . . Given the long-standing relationship we are trying to make it simpler to do business…In lieu of this reporting we will just monitor the deposit balance of Marco." *Id.* at ¶ 67. Martin Smith was not included in this communication. *Id.* at ¶ 67. On May 24, 2017, after a feeble attempt set up a face-to-face meeting with Martin Smith to witness the execution of the 2017 Note Modification, Kolby Baker emailed the 2017 Note Modification to O'Neill and asked her to have Martin Smith sign. *Id.* at ¶ 68. Again, Martin Smith was not included in the email communication. *Id.* at ¶ 68. On May 31, 2017, Stephanie Rogan sent an email to O'Neill, with Kolby Baker copied, requesting a number of significantly past due financial reports and reminding O'Neill that "reporting would no longer be required once the loan documents is signed" as a repeated enticement to have Marco execute the 2017 Note Modification. *Id.* at ¶ 69. After receiving confirmation from O'Neill on June 15, 2017 that the 2017 Note Modification had been signed, Kolby Baker went to Marco the next day to pick up the document. *Id.* at ¶ 70. Upon information and belief, it is standard banking industry procedure for bank representatives to witness client signatures; however, that did not occur with the 2017 Note Modification. *Id.* at ¶ 72.

Again, no Citizens' representative ever discussed the November 2013 and September 2014 fraud incidents which occurred on Marco's accounts with Martin Smith prior to having him sign the 2017 Note Modification, which included the same release language as the 2015 Note Modification. *Id.* at ¶ 75. Upon information and belief, Citizens presented the 2017 Note

Modification in a 'take it or leave it' fashion and did not afford Marco the opportunity to negotiate terms or discuss with an attorney before execution. *Id.* at ¶ 76. Upon information and belief, the "facts known or unknown" release language added in Section 2.2 of the 2017 Note Modification is very uncommon in standard bank note forms, except in known 'troubled' situations. *Id.* at ¶ 77. Upon information and belief, the release language and the other extremely one-sided language within in the 2017 Note Modification were part of a coordinated 'clean-up' effort by Citizens to protect itself from past operational issues and all major past exposures. *Id.* at ¶ 78. Overall, Marco has sufficiently pled facts and circumstances surrounding the alleged execution of the 2015 and 2017 Note Modifications to demonstrate bad faith on the part of Citizens, wherein Citizens concealed (or at a minimum, failed to inform Martin Smith of) actual fraud which occurred in November 2013 and September 2014 within Marco Accounts, while also simultaneously seeking a release of all potential claims Marco may have against Citizens "based on facts known or unknown that exist as of this date." *Id.* at ¶¶ 57, 73. Thus, the 2015 and 2017 Note Modifications are unenforceable against Marco. *Id.* at ¶¶ 58, 74.

Further, despite the implication that it was Marco who requested the modified language within the 2015 and 2017 Note Modifications (*see* Dkt. 66 at p. 14), the facts and evidence at hand demonstrate that it was Citizens who sought to amend the language under the guise that it was trying to assist Marco by lessening reporting requirements. *See* Dkt. 64 at ¶¶ 48-49, 67-69.

Contrary to Citizens' argument, Marco's Amended Complaint contains plausible factual allegations that support an inference that the releases within the 2015 and 2017 Note Modifications should not be enforced. Citizens generally points to certain allegations in the Amended Complaint that are pled upon information and belief as being insufficient as the basis for a plausible claim. *See* Dkt. 66 at pp. 10-12. However, allegations "upon information and belief" are acceptable under

*Twombly* and *Iqbal* when (1) "the facts are peculiarly with[in] the possession and control of the defendant" or (2) the "belief is based on factual information that makes the inference of culpability plausible." *McClure v. Comm'r Jeffrey T. Haste*, 2016 WL 695111, at *1 (M.D. Pa. 2016) (quoting *Arista Records, LLC. v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). "The Supreme Court has held that a plaintiff may plead allegations based upon information and belief, 'so long as he does not rely on boilerplate and conclusory allegations and he accompanies his legal theory with allegations that make his theoretically viable claim plausible.'" *Diaz v. Rucker*, 2016 WL 8735711, at *5 n.9 (E.D. Pa. 2016) (quoting *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). In clarifying the issue, the Supreme Court provided that the plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. Moreover, at this stage of the proceedings, Marco need not establish the elements of a *prima facie* case, rather, a plaintiff need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Here, Marco's Amended Complaint is replete with well-pleaded factual allegations which set forth a plausible claim for relief. Furthermore, those allegations which are pled upon "information and belief" contain and/or are supported by facts and information which are either

(1) peculiarly within the possession and control of Citizens or (2) form a proper basis for Marco's beliefs and support the plausible inference that the releases within the 2015 and 2017 Note Modifications should not be enforced. As set forth in more detail in its Amended Complaint, Marco has pled multiple instances of bad faith and negligence on the part of Citizens against Marco including, among other things, concealment of fraud within Marco's accounts while simultaneously seeking the release of all potential claims Marco may have against Citizens "based on facts known or unknown that exist" as of the date of execution of the 2015 and 2017 Note Modifications. *See* Dkt. 64 at ¶¶ 27-33, 40-43, 45, 48-49, 51-70, 72-78. Marco has pled that Citizens failed to communicate with a duly authorized representative of Marco regarding Citizens' policies and fraud prevention processes and failed to properly enact said fraud preventative measures. *Id.* at ¶¶ 2, 21-24, 35-39, 85-87.

Additionally, Marco alleged that as early as November 2013, Citizens was aware of suspicious and fraudulent activity regarding Marco's accounts and, after additional fraud occurred, indicated on September 4, 2014 that it would place Marco's accounts on a fraud "watch list." *Id.* at ¶¶ 30-33, 40-44, 83. However, Citizens took no additional steps to secure Marco's accounts from fraud then or as an ongoing concern, despite being on notice of the suspicious and fraudulent activity within Marco's accounts. *Id.* at ¶ 45. Marco has sufficiently pled that since 2014, Citizens has processed checks signed by Jacquelyn Jones, a non-related third party who was fraudulently using Marco's routing and bank account number to steal approximately $378,000 from Marco. *Id.* at ¶¶ 82, 92-93, 99, 107, 123, 143. Thus, Marco sufficiently pled its claims of negligence against Citizens who was well aware of its potential risk and liability exposures concerning the Marco accounts prior to the execution of the 2015 and 2017 Note Modifications.

As to the 2015 Note Modification, Marco sufficiently pled that, beginning in May 2015 and in an attempt to entice Marco to sign the 2015 Note Modification, Citizens' representatives reached out to O'Neill regarding Marco's past due financial reports and indicated that with Marco's line of credit coming up for review/renewal in June, Citizens would like to lessen Marco's financial reporting requirements by issuing a modification of the 2009 Note. *Id.* at ¶¶ 48-49. Marco also alleged that on July 10, 2015, a face-to-face meeting between James Nealon of Citizens and Martin Smith occurred, wherein Martin Smith signed the 2015 Modification Note, after it was presented in a "take it or leave it" fashion, and without being informed of the November 2013 and September 2014 actual fraud incidents that occurred within Marco's accounts and, by inference, Citizens' exposure regarding its actions and/or inactions. *Id*. at ¶¶ 51-56.

As to the 2017 Note Modification, Marco sufficiently alleged that at least twice in 2016 Citizens recognized that Marco's balance sheets were significantly out of balance, with one balance sheet being out of balance by "$305M." *Id*. at ¶¶ 62-63. Despite being aware of these imbalances, Citizens sought to modify the 2009 Note again. *Id*. at ¶¶ 66-67. Marco pled that, upon information and belief, it is unheard of for a bank to extend $500,000 of credit to a company whose balance sheet does not balance. *Id*. at ¶ 64. Marco also pled that Citizens, in an effort to entice Marco to sign the 2017 Note Modification, agreed to eliminate "the requirements for quarterly A/R, A/P and Borrowing Base reporting." *Id*. at ¶¶ 67-69.

Marco further pled that instead of going directly to Martin Smith regarding the 2017 Note Modification, Citizens asked O'Neill to set up a time to have Martin Smith sign the Note Modification, and, after a feeble attempt to set up a face-to-face meeting, asked O'Neill to have Smith sign the 2017 Note Modification without a Citizens' representative being present to witness, contradicting standard banking industry procedure. *Id*. at ¶¶ 67-68, 70-72. Marco also alleged that,

once again, the 2017 Note Modification was presented to Smith in a 'take it or leave it" fashion, with Citizens failing to first inform Smith of 1) the actual fraud which occurred in Marco's Accounts and, by inference, 2) Citizens' exposure regarding its actions and/or inactions, while also simultaneously seeking a release of all potential claims Marco may have against Citizens "based on facts known or unknown that exist as of this date." *Id*. at ¶¶ 73, 75-76.

Ultimately, Marco sufficiently alleged that the release language and the other extremely one-sided language within in the 2015 and 2017 Note Modifications were part of a coordinated 'clean-up' effort by Citizens to protect itself from past operational issues and all major past exposures. *Id*. at ¶¶ 47, 61, 78. Additionally, Citizens' push for Marco to execute the 2015 and 2017 Note Modifications, when Marco's financial reporting documents were consistently untimely and questionable, provides plausible support of Citizens' bad faith. Marco's allegations are based on factual information, do not rely on boilerplate or conclusory allegations, and support the plausible inference that the 2015 and 2017 Note Modifications are unenforceable, as Citizens acted in bad faith by concealing, or at a minimum, failing to inform Smith of actual fraud with occurred within Marco's accounts, while simultaneously seeking the release of all potential claims Marco may have had against Citizens "based on facts known or unknown." *See McDermott,* 649 F. App'x at 267-68.

Lastly, Citizens argues that Marco failed to assert a claim for fraudulent inducement. *See* Dkt. 66 at p. 12. However, Marco's Amended Complaint did not attempt to assert a cause of action for fraud or fraudulent inducement. Thus, Citizens' arguments beginning on page 12 and ending on page 13 of its Brief in Support are irrelevant and need not be addressed. Marco has not purported to allege a cause of action regarding fraud, rather it has alleged sufficient facts and allegations relative to the circumstances surrounding the signing of the 2015 and 2017 Note Modifications to

establish that Martin Smith's signatures were not knowingly obtained, but were rather obtained in bad faith by Citizens, and, therefore, unenforceable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff, Marco Contractors, Inc., respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint in its entirety. Alternatively, in the unlikely circumstance that the Court agrees with Citizens' argument that Marco's Amended Complaint does not meet the pleading standard as set forth by Fed R. Civ. P. 8, *Twombly,* and *Iqbal*, which it should not, Marco requests that this Court allow Marco to amend its Amended Complaint to comply with said pleading standard. If a complaint is subject to a Rule 12(b)(6) dismissal, "a District Court must permit a curative amendment, unless such an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Here, there is no indication that any such amendment on Marco's part would be inequitable or futile, nor does Citizens make any such argument.

Date: April 16, 2021

Respectfully submitted,

*/s/ Christopher A. Cafardi*
Christopher A. Cafardi
Pa. I.D. No. 90904
William J. Wyrick
Pa. I.D. No. 70656
Cafardi Ferguson Wyrick Weis + Gabriel LLC
2605 Nicholson Road, Suite 2201
Sewickley, PA 15143

*Counsel for Plaintiff Marco Contractors, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2021, the foregoing document was served electronically via the Court's CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Christopher A. Cafardi*
Christopher A. Cafardi, Esquire
*Counsel for Plaintiff Marco Contractors, Inc.*